THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. PHILLIP SCHILLING, PLAINTIFF IN ERROR

Argued June 16, 1920—Decided November 15, 1920.

When a person twenty-eight years of age kills an officer to escape from arrest and sets up as a defence that he had not sufficient mentality to form in his mind an intent to take life, or to deliberate and determine to execute that intent by a premeditated act, the burden is on him to show his lack of sufficient mental power to conceive and execute the crime. There is a vast difference between a child at the age of eleven years and that of a man of twenty-eight, and while perhaps there is a presumption that an infant of tender years is incapable of committing a crime that presumption does not extend to one of advanced years, requiring the state to rebut it. When a man reaches manhood the presumption is that he possesses the ordinary mental capacity normally pertaining to his age, and it is for him to overcome that presumption, and whether he has done so is for the jury to determine. Deficiency of intellect is a species of insanity, and when that is set up as a defence for crime the burden is on the accused to prove it, the presumption being that he is sane.

---

On appeal from the Essex County Court of Oyer and Terminer.

For the plaintiff in error, *Benjamin M. Weinberg.*

For the state, *J. Henry Harrison* and *John A. Bernhard.*

The opinion of the court was delivered by

· BERGEN, J.   The defendant having been convicted of murder of the first degree has brought the record into this court for review, and asks that the judgment of conviction be reversed because of alleged trial errors, those argued and considered being limited to certain instructions given to the jury, and refusals to charge as requested by the defendant.   The circumstances upon which the conviction rests are, that the defendant was arrested by a police officer named Ryan to answer to an indictment for robbery; that after the defendant was arrested he resisted the efforts of the officer to hold him, and in order to escape, shot and killed the officer.   The alleged errors upon which the defendant relies, and urges, in support of his argument for reversal of the judgment of conviction, are:

1. That the court charged the jury, "The state contends that defendant had sufficient intelligence to know and to understand the nature and quality of the act, and that it was wrong; that a normal boy of eleven years has sufficient intelligence to commit murder in the first degree; that, at all events, this defendant is above the age of eleven years, and that the evidence of Dr. Crane, Dr. Clark and Dr. Washington shows that he is responsible and knows the nature and quality of his act, and that it was wrong."   This was a mere statement of what the state contended, and there was evidence in the case to justify it; whether it was sufficient or not was for the jury to determine.   The court did not charge as stated in the brief of the defendant that, "The normal boy of eleven years has sufficient intelligence to commit murder in the first degree:" all the court did was to state what the state contended had been proven, and there was evidence to support that insistence, nor is the law of our state contrary to that contention.   The rule · of law

applicable in this state, and which has not been departed from, was laid down in *State* v. *Aaron*, 4 *N. J. L.* 231, in which Chief Justice Kirkpatrick said, "It is perfectly settled that an infant within the age of seven years cannot be punished for any capital offence. * * * It is perfectly settled also that between the age of seven and the age of fourteen years the infant shall be presumed to be incapable of committing crime upon the same principle, the presumption being very strong at seven and decreasing with the progress of his years; but then this presumption may be encountered by proof; and if it shall appear by strong and irresistible proof that he has sufficient discernment to distinguish good from evil, to apprehend the nature and consequences of his act, he may be convicted and have judgment of death." In the present case the defendant is twenty-eight years of age, and there was some proof that he was deficient in mentality and that his reasoning powers were not beyond that of a normal child of eleven years of age, but there was also contradictory proof given by eminent and reliable physicians, that the defendant was normal in mentality, fully aware of the quality and nature of his act, and that he knew whether his act was right or wrong. It appears that this man, twenty-eight years of age, seeks to escape punishment for his crime upon the ground that his mentality is, to a certain extent, deficient, and that, according to the testimony of some of the experts, it did not exceed that of a normal person of eleven years, and it is urged that there is a presumption that he would be incapable of committing a crime to the same extent as if of the age of eleven years. But that is not the precise question presented, which, after all, is whether at the age of twenty-eight he had sufficient mentality to distinguish between right and wrong, for at that age he would be presumed to be capable of committing the crime unless he was able to overcome that presumption by proof of a mental condition rendering him incapable of committing the crime, and whether he did so was a jury question, and they by their verdict have found that he had sufficient mentality to determine that it was wrong to kill this officer. We think that when a person

twenty-eight years of age kills an officer to escape from arrest and sets up as a defence that he had not sufficient mentality to form in his mind an intent to take life, or to deliberate and determine to execute that intent by a premeditated act, the burden is on him to show his lack of sufficient mental power to conceive and execute the crime. There is a vast difference between a child at the age of eleven years and that of a man of twenty-eight, and while perhaps there is a presumption that an infant of tender years is incapable of committing a crime, that presumption does not extend to one of advanced years, requiring the state to rebut it. When a man reaches manhood the presumption is that he possesses the ordinary mental capacity normally pertaining to his age, and it is for him to overcome that presumption, and whether he has done so is for the jury to determine. The presumption of the lack of power of thought and capacity in favor of a child is due more to the number of years he has lived than to the character of the development of his mind, and it is a merciful rule established by the courts due to his tender years, but that reason does not apply when he comes to manhood. Deficiency of intellect is a species of insanity, and when that is set up as a defence for crime the burden is on the accused to prove it, the presumption being that he is sane.

2. That the court charged the jury, in substance, that it was contended by the state that the defendant was feeble-minded, but that the law does not recognize every degree of feeble-mindedness as a defence to a criminal charge; that any feeble-mindedness might be considered with reference to the existence of an intent to kill, and its willful, deliberate and premeditated character, and that if "At the time of doing the act, the evidence shows you that this defendant was so feeble-minded that his faculties were prostrated and rendered him incapable of forming a specific intent to kill with its willful, deliberate and premeditated character, then although it is no defence or justification, his offence would be murder in the second degree. But I also charge you that in dealing with such a contention you ought to use great caution not

to give immunity to persons who commit crime when they are merely morally depraved. You should discriminate between conditions of the mind merely blunted by familiarity with wickedness and yet capable of forming a specific intent to take life and carry it out as stated, and such a prostration or condition of faculties as renders a man incapable of forming the intent and carrying it out." The defendant admits that this charge would be faultless if limited to an intended killing which was minus willfulness, and deliberateness, but insists that it is harmful in that it charges that the defendant, even if so feeble-minded that his faculties were prostrated so as to render him incapable of forming a specific intent to kill, would be guilty of murder in the second degree. The objection which the defendant urges to this part of the charge is that there is no such crime as murder in the second degree without a formed intent to take life. But that is not the rule of law in this state. The rule is that where one takes life with intent to do great bodily harm only, it is murder in the second degree. The charge of the court should be read with regard to the subject matter with which the court is dealing, and in this case it was the killing of an officer in the performance of his duty. Our statute (*Comp. Stat., p.* 1779, § 106) declares that if any person shall kill an officer of justice in the execution of his duty such person shall be guilty of murder, and in the succeeding section it provides, *inter alia,* that if the killing be not willful, deliberate and premeditated, it shall be murder in the second degree, one of the elements of murder in the first degree being intent to take life. There was no error in the charge upon the ground urged in that behalf by the defendant, who in shooting an officer to escape from arrest was, unless justified, committing an unlawful act, the probable consequences of which would be bloodshed.

3. That the court instructed the jury, that if, in making the arrest, an officer meets with resistance he is not obliged to retreat or desist, but may repel force with force, and if the officer making the arrest meets with resistance, and in the struggle to enforce the arrest kills the offender, he will be

justified, and if the prisoner should kill the officer, it would be murder. ·The defendant does not claim that this was an inaccurate statement of the law, but insists that it was erroneous because it "leaves out of consideration the principal circumstances of the case, such as the irregular proceeding of the deceased, Ryan, who was making the arrest at the time of the shooting, and excess of authority as exercised by him," the insistence of the defendant being that if any such circumstances appeared in the case, as the defendant contends they did, the crime would not amount to more than manslaughter. The difficulty with the claim of the defendant is that it omits to take into consideration the immediately preceding sentence to that of the excerpt, upon which the defendant relies, which was, "If you find that Ryan was acting in accordance with his duty, it was the duty of the deceased to take the body of the accused into custody and to hold him in custody to answer the indictment, and it was the duty of the accused to submit to such an arrest and custody." Thus it was distinctly left to the jury to find whether the officer was acting in accordance with his duty, and if he was, then he was authorized to repel force with force, as·set out in that part of the instruction complained of. There was evidence that the defendant was under an indictment for robbery and that a *capias* had been issued for his arrest; that Ryan knew this, and that he was making the arrest because of it. He certainly had reasonable cause to suspect the defendant guilty of a crime, and was justified in making the arrest without a warrant. In addition to this the court recalled the jury and submitted to them the question whether under the evidence the arrest was a lawful one. This left to the jury the very matter which the defendant complains was not submitted in the earlier part of the instructions. There was no error in this part of the charge.

4. That the court, in reciting the contention of the state relating to the evidence on which it relied, referred to a portion of defendant's written confession but omitted that part in which he said that the revolver was accidently discharged. There is no legal force in this claim. In the first

place, the court was not instructing as to the effect of any of the evidence but merely reciting what the state's contention was. In the second place, the court had already instructed the jury that his comments upon the testimony were not binding on them and that the court in referring to the testimony was not to be understood as deciding any of the facts but merely as an attempt to elucidate the evidence for the assistance of the jury, or to illustrate or explain principles of law, and that if the court erred in any statement, or assumed the existence of any evidence, whether disputed or not, the jury were to rely upon their recollection and not upon that of the court. To say that a trial judge in a criminal case cannot comment upon certain portions of the evidence without committing a legal error would break down the very salutary rule in this state, so well expressed by Chief Justice Beasley, speaking for this court in *Smith & Bennett* v. *State,* 41 *N. J. L.* 370, as follows: "It is competent for the judge presiding at a criminal trial to lay before the jury for their consideration his own views and inferences from the proof, and such expression, no matter how ill-advised or erroneous, can be reviewed on motion for a new trial, but not on a writ of error." This rule has been followed in *State* v. *Hummer,* 73 *Id.* 714, and *State* v. *Loomis,* 89 *Id.* 8. It is only where the trial court assumed a fact to be proven which is not in the case, or not to be inferred from the testimony, when the comment ceases to be of that character. So in the present case the statement by the court of the contention of the state, cannot be said to be comments by the court upon the evidence, but only a statement of what the state contends it has proven. But even if they be given the grade of comments on the evidence by the court, so long as there is any evidence to support them it is not reviewable upon a writ of error, nor is it subject to such review simply because the trial court does not state all the evidence, so long as none of the material evidence is withdrawn from the consideration of the jury. We find no error in the exception to this part of the charge.

5. The court charged the jury that the state contended that "The defendant ran out South Orange avenue and turned down Jones street into an alley way, at the same time exhibiting his revolver, apparently as a menace to some of those who would follow." The objection of the defendant to this is that there was no evidence that the defendant exhibited his revolver when he ran away "apparently as a menace to some of those who would follow." The evidence in the case discloses that after the defendant had shot the officer and was escaping he still carried in his hand the revolver, and that this exhibition of the revolver deterred some of the witnesses in their pursuit. We think the state was justified in contending that it was a fair inference from the evidence that this escaping criminal, who had just shot down the officer in order to make his escape, and continued to exhibit his pistol while escaping, did it as a menace to his pursuers, and that having shot one man to effect his escape, he would use the same weapon, if necessary, against anyone who attempted to interfere with his purpose. We are of opinion that the statement of the court complained of was based on proper "inference from the proof," and if erroneous, not reviewable on error. *State* v. *Smith & Bennett, supra.*

6. That the court charged that the state contended that it had shown by evidence that the defendant while under arrest waited until another officer, who had been there, was not in' a position to assist Ryan, demanded to be set free, and to effect an escape shot Ryan. The defendant's criticism of this is that the statement of the court that "the state contends" was not a statement of the theory of the state, but of actual facts claimed to have been proven by it, and because no one testified that the defendant waited until the other officer was not in a position to assist Ryan, it was a statement of the inferences which the state desired the jury to find from the facts, and in support of this, relies upon *State* v. *Loomis, supra.* The evidence in the present case is that there were two officers present at the time of the arrest, and that Ryan sent the other officer in pursuit of another man trying to escape who was with the defendant, and that the defendant

did not shoot Ryan until after the other officer had left. We think that under this evidence it was proper to draw an inference that the defendant made no demand to be set free, nor made any effort to escape by killing the officer until he had but one man to deal with, besides, as was said in the case last cited, "The court was not undertaking to state any facts or proof but merely what the contention of the state was." There was no error in the facts stated, because the defendant did not undertake to escape by killing the officer who had arrested him until the other officer was not present, and if what the court said is to be held as a comment, it was an inference to be drawn from the evidence, but whether the jury should draw that inference was left to them.

7. That the court in stating the contentions of the state, namely, that the defendant was armed with a loaded revolver apparently so skillfully concealed about his person as to avoid detection, and that he took the opportunity to use his left hand and shot Ryan when he was not looking or could not seize the revolver, "thus evincing judgment, skill, stealth, and ability to grasp the opportunity, the power of selection; that he permitted some of those who might run after him to see the revolver and believe they were in danger so as to insure his own escape;" that he made intelligent answers to Dr. Clark and Dr. Washington, and two statements evincing in themselves memory and capacity to narrate most of the circumstances attending this deed, and that the state also contended that the psychological tests were inadequate and inaccurate, because they excluded a history of the subject. The objection made by the defendant to this part of the charge is that it is not a matter of opinion but statements of facts practically stated to have been proven by the state, and it is argued by the defendant that the facts did not warrant such statements. The sufficient answer to this, it seems to us, is that while the court stated what the state contended were the inferences to be drawn from the evidence, the facts, if found by the jury, would justify such inferences, and under the rule of law above referred to were not erroneous, as the finding of the inferences was left to the jury.

8. This challenges the correctness of the court in instructing the jury that the court of pardons might modify, change, reduce, abolish or set aside whatever result the jury might arrive at, whether they fixed the penalty as death or life imprisonment. It is enough to say in answer to this that this court, in *State* v. *Rombolo*, 89 *N. J. L.* 565, approved a similar charge. The defendant, however, urges that the amendment of the statute (*Pamph. L.* 1919, *p.* 302) limits the jury, in determining whether it shall recommend imprisonment for life, to a consideration of "all the evidence," and that the power of the court of pardons is not a part of the evidence. We see no merit in this. The power of the jury to commute the sentence to imprisonment for life is statutory and not evidence, and the power of the court of pardons is a constitutional one of common knowledge, and its statement to the jury was of a sound legal proposition not harmful to the defendant, nor error in law, when as in this case it was applied to any verdict the jury might return.

9. That the court charged the jury that the case was a very serious one because if they found beyond a reasonable doubt that the facts were as contended for by the state, it involved a person who was acting on behalf of the government, and on the other hand if guilt was not shown beyond a reasonable doubt it was a very serious charge brought against a person who was not responsible. The objection made by the defendant is that the effect of the instruction was to demand a higher and greater consideration of the case than the ordinary case where murder is charged, and was therefore prejudicial to the defendant. We see no merit in this objection, because where a man is on trial for his life, the issue is a very serious one, and it is not uncommon to call the attention of the jury to the serious nature of the charge.

10. That the court charged the jury, "Where a material fact is within the knowledge of the defendant and he can take the witness stand and deny a material fact which is sworn to by someone else against him, and he fails to do so, his failure presents the situation where you have the right to draw inferences against him." The defendant was not

sworn as a witness in his own behalf, and there were certainly many material facts testified to against him, which he might have denied or explained, and that he may be criticised for declining to avail himself of his opportunity under such circumstances to offer a denial was held in *State* v. *Parker*, 62 *N. J. L.* 801; *State* v. *Wines*, 65 *Id.* 31. The only objection which the defendant urges is that the defendant could not specifically deny because he had not the mental ability to testify in his own behalf, but that begs the question as the court was then charging upon the assumption that the jury might find that he did have sufficient mental capacity, for if he did not then the jury was instructed not to convict him.

11. The court refused to charge as requested that, "If the jury find beyond a reasonable doubt that the deceased knew at the time of the commission of the alleged crime of the existence of an indictment against the defendant, and that deceased was shot in the performance of his duty by the defendant, and that if the jury should find that the defendant was under a passion of hot blood and reasonable provocation and shot without premeditation, that in that case the verdict shall be second degree murder." This request was properly refused for if the defendant shot in hot blood, with reasonable provocation, it would be manslaughter and not murder in the second degree, but there is no evidence in this case to justify any such charge, for there was no proof that the shooting occurred under 'a passion of hot blood and reasonable provocation. The defendant knew that he had been arrested, and for what crime, and it was his duty to submit to the arrest, and if there was any provocation it was of his own making in resisting the arrest. There was no evidence in the case which called for the charge as requested.

12. That the court refused to charge, as requested by the defendant, "Premeditation means a willful and deliberate intent sufficient to support a verdict of first degree murder." This request was properly refused, the first part of it being unsound. Premeditation as used in this state has a meaning

different from either willful or deliberate. *State* v. *Bono-figlio,* 67 *N. J. L.* 239.

13. That the court refused to charge as requested, "If, at the time of the commission of the act the defendant was really unconscious that he was committing a crime, this defendant must be acquitted." This request was charged in effect, for the court said, "The defence is in part insanity. If a defence of this character be sufficiently established the law accords the accused the benefit of it by an acquittal." This is a substantial compliance with the request.

14. The court refused to charge, as requested, that "The jury in considering this case, are bound to act upon the presumption that the accused, the defendant, is innocent and should endeavor if possible to reconcile all the circumstances of the case with that of innocence." This was merely another way of stating the effect of reasonable doubt, and that the court had fully charged.

15. That the court refused to charge as requested that if the jury "find that the defendant is of mental age of under twelve years, he is presumed to be incapable of a commission of a crime unless he is proven by the state, beyond a reasonable doubt, to be capable of a commission of a crime," and further that "If they find that the defendant is of a mental age of under twelve years the evidence that he understood the nature and quality of the act charged against him must be strong and clear beyond a reasonable doubt." There is no legal merit in this request. The responsibility of an adult charged with a commission of a crime is not to be measured by a comparison of his mental ability with that of an infant of twelve years, or in any other way. The true test is, does he appreciate the nature and quality of his act and that it is wrong, and if he does he is responsible to the law without regard to his other mental deficiences, therefore both of these requests were properly refused.

After a careful examination of all the matters raised and argued we find no error in this record. Therefore the judgment will be affirmed.

SWAYZE, J. (dissenting). The issue on the plea of not guilty involved the question whether the defendant could act willfully, *i. e.,* with malice aforethought, to use the ancient expression. Slight as the evidence might be as to the mental incapacity of the defendant, it was in character the same as is presented in all cases where the defence is insanity. In such cases the question of guilt or innocence of the crime generally is always left to the jury. In the present case the trial judge withdrew the general question from the jury and permitted them only to deal with the degree of murder so far as the evidence relating to mental capacity is concerned, and he read from a charge of Justice Magie on the subject of the effect of drunkenness. Drunkenness is the voluntary act of the individual; there is no presumption and no evidence in this case that the mental incapacity of the defendant, if he was mentally incapable, was the result of his voluntary act. Whether or not he was incapable was for the jury. To me the case of idiocy or mental incapacity is as much for the jury on the question of criminal intent as in the case of insanity. Shocking as the case is, I cannot bring myself to sustain a conviction which I think is not based on a proper statement of the law. Justices Minturn and Kalisch concur in this dissent.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, BERGEN, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON, JJ. 11.

*For reversal*—SWAYZE, MINTURN, KALISCH, JJ. 3.