302 So.2d 556

**Paul EDGERSON, alias**

v.

**STATE.**

**6 Div. 598.**

Court of Criminal Appeals of Alabama.

Oct. 1, 1974.

Rehearing Denied Oct. 29, 1974.

William J. Baxley, Atty. Gen., Montgomery, and Jonathan Prince Gardberg, Sp. Asst. Atty. Gen., Mobile, for the State.

Edward M. Selfe, Birmingham, for appellant.

ALMON, Judge.

Appellant, a male age thirty-six was found guilty of indecent molestation of a six-year old female. He was sentenced to serve five years in the penitentiary.

The evidence was without contradiction that the appellant did, in fact, sexually molest the child. Fortunately, the record shows no serious harm was done to the young girl, because the appellant was

frightened away by the approach of a third person. The testimony shows he "skipped" away from the scene.

The jury rejected appellant's plea of insanity after the trial judge had properly charged them on the Parsons Rule. Parsons v. State, 81 Ala. 577, 2 So. 854. Prior to trial, defense counsel filed a motion to quash the indictment, averring inter alia that the appellant was unable to defend himself and unable to help his attorney present his defense. This motion was heard prior to the trial, where the following occurred:

"THE COURT: Let's show that it is stipulated between the State and the defense, as to the motion to quash the indictment, or to transfer the case to juvenile court, that the defendant, the movant—is thirty eight years old?

(Thereupon, ensued an off-the-record discussion, following which the following proceedings were had and done:)

"THE COURT: Thirty six? All right. Anyway, is in his thirties, is over thirty years of age.

"MR. SELFE: Yes, sir.

"THE COURT: That Dr. Blankenship, who is a psychiatrist, on August 23, 1972, examined the defendant and reported:

" 'This individual is mentally retarded, is functioning in the pre-school range of intelligence and has no judgment or inside [sic] to the nature of this crime. However, at this time I do not see as to where he could benefit from Partlow. My only recommendation at this time is a structured environment (close supervision at home) and vocational training.'

"It is further stipulated that on February 23, 1973, Dr. George Turner, a psychiatrist, stated:

" 'This individual is not psychotic and my only recommendation at this time is a structured environment with close supervision at home.'

"Now, does that cover substantially what —the fact that he is over thirty years of age and that this is what the doctor said?

"MR. SELFE: Pre-school intelligence. That is what I wanted to get in.

"THE COURT: Gentlemen, based on this, it is the Court's ruling that the motion to quash is overruled, and the alternate request that the case be transferred to juvenile court is overruled, and that movant, or the defendant, excepts.

"Is that correct?

"MR. SELFE: I do, yes, sir.

"THE COURT: All right."

After the state rested its case, the appellant introduced several witnesses tending to support the defense of insanity. This evidence was presented in addition to the evidence of the appellant's competency to stand trial at the hearing of the pre-trial motion.

A psychiatrist who had examined the appellant during his confinement in the county jail testified that the appellant functioned at a pre-school intellectual capacity and did not have any "judgment or inside (sic) into the nature of this crime." The psychiatrist noted that although the appellant had gone through the fourth grade in school, he still had a pre-school mentality. No evidence concerning the performance of the appellant in grammar school was presented. The witness stated that the appellant could not profit from institutional confinement but that he should be placed in a structured environment and subject to planned vocational training. The expert concluded that the appellant should be supervised as a pre-school child would be inasmuch as he lacked the "internal controls" necessary to govern his behavior; but that the appellant showed no signs of psychosis or other mental illness. The psychiatrist

also made it clear that his examination of the appellant was not long and he could form no opinion on whether the appellant knew right from wrong on such summary analysis.

A psychiatric social worker testified that she had observed the appellant when talking with him on several occasions. She testified that the appellant was mentally retarded.

The appellant's mother testified that the appellant fell from a housetop when he was three or four years of age and that the trauma occasioned a lapse of consciousness lasting some 15–20 minutes. She also testified that the appellant had received another blow on the head with a "ricket bat" a few years later. The appellant's mother stated that he displayed eccentric behavior during nocturnal slumber, to-wit: walking, talking, laughing and teeth gritting; that appellant spent eleven years at the Partlow State School and five years at Searcy Hospital. She also stated that the appellant often imagined things that were untrue.

Oliver Gray testified that he owned Gray's Funeral Home in Birmingham. He stated that his brother, a minister, had gotten the appellant out of Partlow some years ago; that appellant stayed with him and worked for him and that he was "just a handy fellow, just to give him something to do", such as sweeping the floor and cleaning up. He further stated that appellant was not capable of doing anything more than that. He testified that appellant liked to play as a child likes to play. Gray stated that on occasion he would let appellant cook for himself and that he would cook meals for two people, set a table for two people, and act and talk as though he was dining with another person when, in fact, he was dining alone.

■ Appellant's counsel first contends the court was in error in refusing to give the following written requested charge:

"I charge you that if you find the Defendant has a mental age of approximately 6 years you must find the Defendant not guilty."

This contention has support at common law. In IV Blackstone Commentaries, *23, we find on page 1229:

"But by the law, as it now stands, and has stood at least ever since the time of Edward the Third, the capacity of doing ill, or contracting guilt, is not so much measured by years and days, as by the strength of the delinquent's understanding and judgment. For one lad of eleven years old may have as much cunning as another of fourteen; and in these cases our maxim is, that 'malitia supplet aetatem' (malice is held equivalent to age). Under seven years of age indeed an infant cannot be guilty of felony; for then a felonious discretion is almost an impossibility in nature; but at eight years old he may be guilty of felony. Also, under fourteen, though an infant shall be prima facie adjudged to be doli incapax (incapable of guile); yet, if it appear to the court and jury that he was doli capax (capable of guile), and could discern between good and evil, he may be convicted and suffer death. * * *"

However, our Supreme Court has taken the view that actual age controls when applying the common law presumptions as to criminal mental capacity, preferring instead to approach the problem by submitting the matter to a jury under the Parsons Rule, supra. In Hall v. State, 248 Ala. 33, 26 So.2d 566, the court stated:

"Defendant offered the testimony of several physicians who had more or less expert knowledge in mental diseases. Among them was Dr. Mayfield, who was permitted to testify that defendant was, in his opinion, born with a low mentality and a handicapped mind; that it reached a peak of development at a mental age of around six or seven years and then stopped; that he had been subnormal in

comparison with other children of his age, always handicapped and inferior mentally. The doctor had previously testified that upon his interview with the defendant he manifested nothing that reflected insanity. He was 'just mentally deficient.' The question, therefore, propounded to Dr. Mayfield to which objection was interposed and sustained, as to whether or not the defendant in his opinion had a mind of about a 'six or seven year old chap,' was in fact answered in that portion of Dr. Mayfield's testimony above-noted.

"We may add here, however, our agreement with the authorities to the effect that criminal responsibility does not depend upon the mental age of the defendant, and that a comparison of an adult person with the mental age of a child is not the proper method of proof in cases of this character. Such was the holding of the Massachusetts Court in Commonwealth v. Trippi, 268 Mass. 227, 167 N.E. 354, and of the New Jersey Court in State v. Schilling, 95 N.J.L. 145, 112 A. 400. See also the cases found cited in the note to the text of 22 C.J.S. Criminal Law, § 58, p. 122.

"We prefer to adhere to the rule announced in the Parsons case, Parsons v. State, 81 Ala. 577, 2 So. 854, 60 Am.Rep. 193, recently re-affirmed in Reedy v. State, 246 Ala. 363, 20 So.2d 528, which requires in insanity cases that the proof should show, that at the time of the commission of the crime the defendant was afflicted with a diseased mind to the extent: (1) He did not know right from wrong as applied to the particular act in question, or (2) if he did have such knowledge, he nevertheless, by reason of the duress of such mental disease had so far lost the power to select the right and to avoid doing the act in question as that his free agency was at the time destroyed, and (3) that, at the same time, the crime was so connected with such mental disease, in the relation of cause

and effect, as to have been the product of it solely."

The trial judge therefore correctly refused the written requested charge.

Appellant further contends that committing him to the state penitentiary constitutes cruel and unusual punishment, in violation of the Alabama Constitution and the Eighth Amendment to the United States Constitution as applied to the states by the Fourteenth Amendment.

He relies on Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758, which held a California statute unconstitutional for making it a criminal offense for a person to be "addicted to the use of narcotics." The court reasoned that to punish a person for that offense is to punish a condition or status rather than an act. Our statute on child molestation does not punish the status of mental retardation, it punishes the act of sexually molesting children, whether a person be mentally retarded or not. We do not think the proposition can be sustained that all mental retardates are compulsively inclined to indecent liberties with children. Yet on the other hand, most would agree that a narcotics addict is compulsively inclined to take narcotics.

In short, we do not think our statute attempts in anywise to punish a status as opposed to an act. We hold that *Robinson,* supra, is not applicable to this situation.

A more serious question arises from the contention that the trial judge should have inquired further into appellant's mental capacity to stand trial. Title 15, § 426, Code of Alabama 1940, provides as follows:

"Inquisition in certain cases of felony; proceedings.—If any person charged with any felony be held in confinement under indictment, and the trial court shall have reasonable ground to doubt his sanity, the trial of such person for such offense shall be suspended until the jury shall inquire into the fact of such

sanity, such jury to be impaneled from the regular jurors in attendance for the week or from a special venire, as the court may direct. If the jury shall find the accused sane at the time of their verdict, they shall make no other inquiry, and the trial in chief shall proceed. If they find that he is insane at that time, the court shall make an order committing him to the Alabama state hospitals, where he must remain until he is restored to his right mind. When the superintendent of the hospitals shall be of opinion that such person is so restored he shall forthwith, in writing, inform the judge and sheriff of such court of the fact, whereupon such person must be remanded to prison on an order of such judge, and the criminal proceedings resumed. In no event shall such person be set at large so long as such prosecution is pending, or so long as he continues to be insane."

■ Since Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, and Pierce v. State, 52 Ala.App. 422, 293 So.2d 483, the provisions of the above statute are considered constitutionally mandatory rather than discretionary, and the refusal of the trial court to submit this issue to a jury is reviewable.

■ The evidence was without contradiction, both before and during trial, that the appellant was mentally retarded and functioning at the pre-school range of intelligence. We are of the opinion that this evidence was sufficient to generate a reasonable ground to doubt his competence to stand trial.

Having determined that the appellant was entitled to a jury determination of his competency to stand trial, we must now decide what standard is to be followed.

In IV Blackstone Commentaries, *24, we find:

" * * * Also if a man in his sound memory commits a capital offence, and before arraignment for it, he becomes mad, he ought not to be arraigned for it; because he is not able to plead to it with that advice and caution that he ought. And if, after he had pleaded, the prisoner becomes mad, he shall not be tried: for how can he make his defence? If, after he be tried and found guilty, he loses his senses before judgment, judgment shall not be pronounced; and if, after judgment, he becomes of non-sane memory, execution shall be stayed: for peradventure, says the humanity of the English law, had the prisoner been of sound memory, he might have alleged something in stay of judgment or execution. Indeed, in the bloody reign of Henry the Eighth, a statute was made, which enacted that if a person, being compos mentis (of sane mind) should commit high treason, and after fall into madness, he might be tried in his absence, and should suffer death, as if he were of perfect memory. But this savage and inhuman law was repealed by the statute 1 and 2 P. and M., c. 10. For, as is observed by Sir Edward Coke, 'the execution of an offender is for example, ut poena ad paucos, metus ad omnes perveniat (that the punishment may reach the few, but the fear of it affect all): but so it is not when a madman is executed; but should be a miserable spectacle, both against law, and of extreme inhumanity and cruelty, and can be no example to others.' But if there be any doubt, whether the party be compos or not, this shall be tried by jury. * * * "

Numerous other jurisdictions have considered this question and have held that in determining the defendant's capacity to stand trial, the test is whether he has the capacity to comprehend his position, to understand the nature and object of the proceedings against him, and whether he can conduct his defense in a rational manner, to co-operate with his attorney in preparing his defense. 21 Am.Jur., Criminal Law § 63 (1965). Federal courts have also adopted this standard. Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed. 2d 824.

It may well be argued that the federal standard is the minimum required of states. In Pate v. Robinson, supra, Mr. Justice Black in his dissent stated:

"Before turning to the facts, it is pertinent to consider the quality of the incompetence they are supposed to indicate. In federal courts—and I assume no more is asked of state courts—the test of incompetence that warrants postponing the trial is reasonably well settled. In language this Court adopted on the one occasion it faced the issue, 'the "test must be whether . . . [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding— and whether he has a rational as well as factual understanding of the proceedings against him."' Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824."

It should be noted that while Justice Black dissented from the majority opinion, his dissent was based on the facts of the particular case before the Court, and not on the general proposition that a competency hearing should be conducted if the defendant appears to be incompetent.

One of the first cases in this country dealing with the problem of competency to stand trial is Freeman v. People, 4 Denio. 9, 47 Am.Dec. 216 (N.Y.1847). After discussing the common law theory that no madman should be tried for an offense, the court went on to state that:

" . . . A person arraigned for a crime, is capable of understanding the nature and object of the proceedings going on against him; if he rightly comprehends his own condition in reference to such proceedings, and can conduct his defense in a rational manner, he is, for the purpose of being tried, to be deemed sane, although on some other subjects his mind may be deranged or unsound."

\*    \*    \*    \*    \*    \*

"As is said in IV Harg. State Trials 205, 'there may be circumstances lying in his private knowledge, which would prove his innocency, of which he can have no advantage, because not known to the persons who shall take upon them his defense.' The most distinguished writers on criminal jurisprudence concur in these humane views, and all agree that no person in a state of insanity, should ever be put upon his trial for an alleged crime, or be made to suffer judgment of law. A madman cannot make a rational defense . . . ."

Freeman goes on to make it clear that the insanity which precludes responsibility for crime and that which precludes trial are not necessarily the same. Other decisions have also made this distinction. Lyles v. United States, 103 U.S.App.D.C. 22, 244 F. 2d 725, cert. den., 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067; Johnson v. State, 73 Okl.Cr. 370, 121 P.2d 625; Commonwealth v. Moon, 383 Pa. 18, 117 A.2d 96; Magenton v. State, 76 S.D. 512, 81 N.W.2d 894.

In considering the standard used to determine capacity to stand trial, the Louisiana Supreme Court in State v. Genna, 163 La. 701, 112 So. 655, quoting Wharton & Stillé, Medical Jurisprudence, vol. 1, p. 210, § 206 (5th Ed. 1905) stated:

"The test of present insanity which will prevent a trial in a criminal action is whether the person is mentally competent to make a rational defense. And the question is whether the accused was sane enough to present to counsel the facts which ought to be stated and presented to the jury upon his trial. The knowledge of right and wrong as a test of insanity does not apply to a collateral proceeding to ascertain the mental capacity of the person about to be put on trial for a criminal act. A person arraigned for crime, however, who is capable of understanding the nature and object of the proceeding against him, and who comprehends his own condition in reference to it and can conduct his defense in a ra-

tional manner is deemed sane for the purpose of being tried, although on some other subjects his mind may be unsound."

In a later decision on this subject, this same court stated that this principle was one adopted from the common law. State v. Swails, 223 La. 751, 66 So.2d 796.

The Supreme Court of Mississippi in Carter v. State, 198 Miss. 523, 21 So.2d 404, considered this same question and stated:

"One of the most fundamental and humane requirements of the common law enshrined in the due process of law provision of our Constitution, is that no one shall be tried for the commission of a crime when he is mentally incapable of making a rational defense, i. e., incapable of remembering and intelligently stating the facts on which his defense rests. This mental condition may be casual, temporary or permanent, and may result from any cause. When it is made to appear in the trial court that the mentality of a defendant in a criminal case is probably of this character, his trial should not be proceeded with until that question has been investigated, and it has been made to appear that he is sufficiently rational for the purposes of his defense. * * *"

Other jurisdictions have adopted this same standard and have applied a test similar to that adopted by Louisiana and by the federal courts. People v. Perry, 94 P.2d 559, 14 Cal.2d 387, 12 A.L.R. 1123; In re Buchanan, 61 P. 1120, 129 Cal. 330; People v. Geary, 298 Ill. 236, 131 N.E. 652; Jordon v. State, 124 Tenn. 81, 135 S.W. 327. See other numerous decisions cited in 44 C.J.S. Insane Persons § 127, n. 66.

We have not been cited to any cases nor has our research revealed a case in which the appellate courts of this state have directly resolved which standard should be used to determine mental competency to stand trial.[1] From the foregoing discussion, it is clear that the majority of jurisdictions in this country, as well as the federal courts, have adopted the standard set out in the early case of Freeman v. People, supra.

 We adopt the majority view and hold that a criminal defendant must have an understanding of the proceedings against him and an ability to communicate with his attorney in preparing his defense before he may be proceeded against criminally.

Therefore, in accordance with Pierce v. State, supra, the judgment of conviction is hereby suspended, and the cause is remanded to the trial court for a jury determination of the issue of competency to stand trial.

Judgment suspended; remanded with directions.

All the Judges concur except CATES, P. J., not sitting.

---

1. Hunt v. State, 248 Ala. 217, 223, 27 So.2d 186.