LEIGH M. CLARK, Supernumerary Circuit Judge.
A jury found appellant guilty of an assault with intent to murder, as charged in an indictment. The court imposed a sentence of imprisonment in the penitentiary for ten years. Defendant had pleaded not guilty and not guilty by reason of insanity.
At the time of defendant’s arraignment, his attorney, appointed by the court on the basis of defendant’s indigency, who represented defendant on the preliminary hearing in County Court as his court-appointed counsel and who continues to represent him as such on this appeal, stated to the court that there was a serious question as to defendant’s mental competency to stand trial and reserved the right to raise the issue as to mental competency to stand trial. It ws understood among the court, counsel for the State, defendant and defendant’s counsel that the case would be set for trial about three months after the arraignment, but in the meantime defendant’s counsel would consider further the question of defendant’s mental competency to stand trial and file an appropriate petition on the subject, if he determined it advisable. On the day set for trial of the case, defendant’s *623 attorney filed a “Petition for Continuance and Psychiatric Evaluation and Treatment of Defendant.” Upon call of the case for trial, there was an announced agreement between the State and defendant and his counsel that the case be continued to a date certain, approximately a month thereafter, for a hearing to determine whether defendant was mentally competent to stand trial. The matter was thoroughly discussed among the court, counsel for the State, defendant and defendant’s counsel, in open court, and it appears that defendant voluntarily and understandingly, with the approval of his counsel, waived any right to a jury to determine his competency, and agreed for the hearing thereon to be conducted by the court without a jury, it being understood that he was not waiving his right to a trial by jury on the issue as to his guilt. A written waiver was executed by defendant and his attorney.
The arraignment and the other proceedings thus far narrated were conducted by a judge of the circuit other than the judge who thereafter conducted the hearing as to defendant’s competency to stand trial and who presided over the trial of the case and pronounced sentence.
An uncle and an aunt of defendant testified in his behalf. Defendant also testified. He was questioned by counsel for defendant and counsel for the State and by the court. The officer who arrested defendant testified for the State.
After the hearing was concluded and a short recess was taken, the court ordered that “the defendant be tried for the offense as charged.” The trial commenced the next day.
Both on the trial and on the hearing as to defendant’s competency to stand trial, there was considerable evidence of abnormal behavior on the part of defendant. Defendant was a boarder in the home of his cousin and his cousin’s wife. There was an understanding among them that he was to pay for his board, but he had become delinquent. The evidence showed that he had been taking gasoline from a motor vehicle of his cousin and using it in defendant’s automobile. There was an argument about this between defendant and his cousin’s wife, and in the course of the argument defendant shot his cousin’s wife, the victim named in the indictment. It was a lengthy trial, but there was very little conflict in the evidence as to what actually occurred. The peculiarities of defendant were detailed on the trial of the case as well as on the hearing as to his mental competency to stand trial. Although a plea of insanity had been interposed, defendant’s counsel stated to the court that he did not request instructions to the jury as to the special plea of not guilty by reason of insanity. No physician or related professional testified éither on the trial or on the pretrial hearing.
The evidence was ample to support the verdict of the jury. No contention is made to the contrary. It is obvious that on the trial defendant was striving for a verdict of guilty of assault and battery instead of a verdict of guilty of assault with intent to murder. The court aptly and amply charged the jury as to the lesser included offense of an assault and battery, and under the instruction of the court the jury could have well found the defendant guilty of an assault and battery unless all jurors were convinced by the evidence beyond a reasonable doubt that defendant was guilty of an assault with intent to murder.
Appellant’s sole contention on this appeal is that the trial court “erred in holding that the defendant had the present mental ability to stand trial at the time of his trial.” Appellant relies upon Dusky v. U. S., 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824, and Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, to the effect that a conviction while one is not legally competent to stand trial constitutes a violation of defendant’s constitutional right to due process and that state procedures must be adequate to protect a defendant’s right in this respect.
*624 Appellant does not question the adequacy of the procedure followed to determine defendant’s mental competency to stand trial. It was in accordance with Code of Alabama 1940, Title 15, Section 426, except in the particular that therein it is provided that a jury shall make the determination whether defendant is competent. The validity of the waiver of the jury trial by defendant is not questioned. Questioned only is the correctness of the court’s determination.
Evidence tending to show abnormality of mind largely revolved around his idiosyncrasies with reference to what and when he ate, as to which there was no substantial dispute in the evidence. He testified that he had a special diet, that he ate snacks of popcorn, potato chips and cookies and that he only ate a normal meal about once a month. He said that normal food made him feel doped and dulled his senses greatly. He testified that some invisible force seems to control the actions of man. He also said he knew the world was flat, although he had been taught in school that it was round. In appellant’s brief, his testimony as to- his ideas of death and divinity are characterized as disjointed and incoherent, and we do not disagree. His uncle considered it strange and unusual that defendant often slept in his car. Although only thirty-one years of age, he was drawing Social Security disability payments on account of his inability to work by reason of his diet. Defendant said he had been in a mental institution for three months in 1966.
On the hearing as to defendant’s mental competency and on the trial of the case, defendant referred to the incident for which he was tried as an accident. He indicated that he regretted shooting the victim, that he was concerned about her condition, but he insisted that he couldn’t help it.
There was no evidence presented on the hearing or on the trial to the effect that at the time of trial his mental state was inferior to what it had ever been or what it would ever be in the future. The trial court asked him several questions relative to his understanding of the seriousness of the charge against him, the chances and consequences of a conviction, what his rights were as to testifying, and his responses indicated strongly that his case from his standpoint would not be jeopardized or injured in any way by any mental inferiority.
In Edgerson v. State, 53 Ala.App. 581, 302 So.2d 556, it was said:
“One of the first cases in this country dealing with the problem of competency to stand trial is Freeman v. People, 4 Denio. 9, 47 Am.Dec. 216 (N.Y.1847). After discussing the common law theory that no madman should be tried for an offense, the court went on to state that:
“ ‘ . . . A person arraigned for a crime, is capable of understanding the nature and object of the proceedings going on against him; if he rightly comprehends his own condition in ref- . erence to such proceedings, and can conduct his defense in a rational manner, he is, for the purpose of being tried, to be deemed sane, although on some other subjects his mind may be deranged or unsound. ’ ”
It was stated further in Edgerson:
“We adopt the majority view and hold that a criminal defendant must have an understanding of the proceedings against him and an ability to communicate with his attorney in preparing his defense before he may be proceeded against criminally.”
The trial judge did not expressly state that he determined the defendant was mentally competent to stand trial, but the clear implication is that he did, and there is no contention by appellant to- the contrary. We are of the opinion that the determination was correct. The earnest and commendable insistence by appellant’s counsel *625 to the contrary calls for extraordinary circumspection, which we have attempted to give the matter.
In reviewing the record for possible error, we have been impressed by the fairness of the trial and by the able representation of defendant by counsel. We find no error prejudicial to defendant. The judgment appealed from should be affirmed.
The foregoing opinion was prepared by Supernumerary Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
TYSON, HARRIS, DeCARLO, and BOOKOUT, JJ„ concur.