LEIGH M. CLARK, Supernumerary Circuit Judge.
This appeal is from a conviction of robbery and a sentence to imprisonment for ten years. Defendant had pleaded not guilty and not guilty by reason of insanity.
Before the trial commenced, counsel for defendant made known to the court that he contended that defendant was incompetent to stand trial. He was obviously questioning the right of the State and the court to proceed with the trial unless and until a determination was made by a jury of the issue of his competency to stand trial when the trial court has reasonable ground to doubt his sanity at the time of trial or his competency to stand trial at such time, as required by Code 1940 Tit. 15, § 426, in pertinent part as follows:
“If any person charged with any felony be held in confinement under indictment, and the trial court shall have reasonable ground to doubt his sanity, the trial of such person for such offense shall be suspended until the jury shall inquire into the fact of such sanity, such jury to be impaneled from the regular jurors in attendance for the week or from a special venire, as the court may direct. . . ”
The court denied the request implied in the action of counsel for defendant and proceeded with the trial. No question is raised on appeal as to the sufficiency of the evidence to sustain the charge of robbery; no claim is made that the jury was not *1094 acting well within its province in impliedly finding that defendant was not insane at the time of the alleged crime. Appellant contends that the evidence presented to the court before and during trial furnished “reasonable ground to doubt his sanity,” or his mental competency to stand trial, and that the trial court was in error in not having such issue determined by a jury before defendant was put to trial on the indictment.
In support of appellant’s contention, he relies chiefly on the testimony of appellant’s mother as follows:
“A I believe he is mentally retarded because I recognized it when he was six years old and I discussed it with his father that something was wrong with him and we should seek help to help him and he said no.
“Q Did Jerry have any problems in school as far as learning and being able to concentrate?
“A That’s right.
“Q What were those problems?
“A He couldn’t comprehend anything. He got F’s all the way through school. He was sixteen when he got out and, you know, they couldn’t control him and they just expelled him.
“Q Did you, in fact, seek any help for Jerry?
“A After his father died.
“Q Who did you go to?
“A I sent to Mental Health and I talked to a doctor.
“Q Montgomery Area Mental Health?
“A Yes, when it was on Jeff Davis.
“Q And they treated Jerry?
“A They talked to him and they got him in school a couple of times.
“Q Did Jerry get any disability checks from the Department of Mental Health or Social Security?
“A No, not until recently.
“Q That is what I am asking.
“A Recently.
“Q Was that based or do you know whether it was based on his mental disorder?
“A It was based on his mental disorder because I had a friend of mine take him down there because I had a stroke and I couldn’t get around too good. In the early part of September in ’74 I asked her to take him down and file him on mental health, retarded, but she couldn’t give all the information.”
Appellant also bases his present contention on some testimony of appellant’s mother prior to trial to the effect that on one occasion he had attempted to burn her with a cigarette lighter and had said, “I am trying to burn you up because we don’t need you.” There was some other testimony by appellant’s mother as to what she considered abnormal conduct on his part. Included in her testimony was evidence that at one time she attempted to have him hospitalized for mental illness, but after keeping him three days the doctor said, “There wasn’t anything wrong with him.”
Appellant argues that “Defendant fully met his burden of raising a sufficient doubt as to his competency by the uncontra-dicted evidence of his mother to the effect that he was mentally retarded.” We are unable to accept this conclusion. The fact that one is mentally retarded does not in and of itself require a finding by the trial court to the effect that it has reasonable doubt as to defendant’s competency to stand trial. In support of his proposition, appellant quotes from Edgerson v. State, 53 Ala.App. 581, 302 So.2d 556 (1974) as follows:
“The evidence was without contradiction, both before and during trial, that the appellant was mentally retarded and functioning at the pre-school range of intelligence. We are of the opinion that this evidence was sufficient to generate a reasonable ground to doubt his competence to stand trial.”
In the instant case there was no evidence that defendant was “functioning at the preschool range of intelligence.” Furthermore, the statement quoted from Edgerson is not to be taken out of context. The evidence as to mental retardation of defendant and as to his pre-school range of intelligence was *1095 furnished by eminent psychiatrists and a psychiatric social worker. Edgerson had spent eleven years at the Partlow State School and five years at Searcy Hospital. There was voluminous evidence of several witnesses that he was considered by them to be insane.
We are not convinced that the trial court had, or should have had, reasonable ground to doubt defendant’s competency to stand trial.
After the court had given its oral charge, it stated to the jury, “now the defense has requested certain charges that are correct statements of law and I will read them to you at this time.” Appellant ingenuously argues that in the light of Rule 51, Alabama Rules of Civil Procedure, providing that the charges given “shall be read to the jury without reference as to which party filed the request,” and other authorities on the subject, the trial court committed prejudicial error in stating to the jury that the written charges were requested by defendant. He quotes from comments to ARCP 51, as follows:
“This rule prohibits identification of requested charges by reference to the party requesting same. If the purpose of reading the written charges to the jurors is to impress upon them that instructions prepared by the parties and given by the court are entitled to equal consideration with the court’s oral charge and contain correct statements of the law as approved and adopted by the court, it is hard to justify designating certain charges as having been requested by one party or the other. Since it is the duty of the court to instruct the jury on the law, and not the duty of plaintiff or defendant’s attorney, it would seem appropriate that the court make no comment as to which party requested the charge. In Carlson v. Sanitary Farm Dairies, 200 Minn. 177, 273 N.W. 665 (1937), Mr. Justice Loring of the Supreme Court of Minnesota stated:
“ ‘Before passing to the considerations of this charge, we wish to express our disapproval of the action of some trial courts in announcing, as was done in this case, that any portion of the charge is given by request of either party. A requested charge should be given only when the trial court approves of and adopts as its own the law contained in the request, and it should preferably be incorporated in the appropriate part of the body of the charge so as not to destroy its symmetry.’
“If the requested charges submitted to the court by the parties are correct statements of the law, little justification exists for singling them out as being charges requested by plaintiff or defendant.”
Appellant recognizes that the Alabama Rules of Civil Procedure are not applicable to criminal proceedings and that Code 1940, Tit. 7 § 273, which is applicable, provides:
“. . . The court shall after the conclusion of his charge to the jury read such written charges as he has given for the parties in a clear and audible voice, saying to the jury, ‘these are instructions given you by the court at the request of the plaintiff or defendant, as the case may be, and are correct statements of the law to be taken by you in connection with what has already been said to you.’
It is not for us to here pass upon the relative merits or demerits between the procedures prescribed by the quoted provisions of Code 1940, Tit. 7 § 273, and Rule 51, ARCP. We must adhere to the law as it is and not attempt to change it to what we, or others, may think it should be. The trial court followed the applicable law in submitting defendant’s written charges to the jury as it did.
We have searched the record for error prejudicial to defendant and have found none. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Supernumerary Circuit Judge Leigh M. Clark, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby *1096 adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.