This cause comes before this Court on writ of certiorari to the Court of Criminal Appeals, 445 So.2d 932, to review the appropriateness of a judgment of that court granting a writ of mandamus to the Circuit Court of Montgomery County.
The opinion of the Court of Criminal Appeals states:
 "This matter comes on to be heard on a petition for a writ of mandamus, or in the alternative, for a writ of prohibition by Hon. James H. Evans, District Attorney of the Fifteenth Judicial Circuit, directed to Hon. Perry O. Hooper, Circuit Judge, Fifteenth Judicial Circuit.
 "Under the facts as presented to this Court, the respondent is not held in confinement, being out on bond. Therefore, the Circuit Judge was without authority to order a jury determination of the respondent's competency to stand trial. Billups v. State, 338 So.2d 478 (Ala.[Cr].App. 1976); Hawes v. State, 48 Ala. App. 565, 266 So.2d 652 (1972); Ala. Code, § 15-16-21 (1975)."
The petitioner is charged under a three-count indictment with theft of property in the first degree. Code 1975, § 13A-8-3. At arraignment she pled not guilty and not guilty by reason of insanity. Later petitioner's attorneys filed a motion, requesting a hearing to determine her mental competency to stand trial. A licensed psychiatrist and a licensed psychologist both testified that petitioner was unable to cooperate with counsel and assist in the preparation of her defense. One of her attorneys testified that she did not understand the nature of the charges pending against her and was unable to assist in the preparation of her defense.
The trial judge initially entered an order finding petitioner competent to stand trial. Upon reconsideration of this order, the judge ordered an independent examination of petitioner and scheduled a jury trial to resolve the issue. The jury trial did not take place because of the issuance of the writ of mandamus to which we have previously referred.
Petitioner asserts that the circuit court has inherent authority to order a jury trial to determine competency and that, absent an abuse of discretion, a circuit court's order granting such a trial should not be reversed. Alternatively, petitioner argues that Code 1975, § 15-16-21, is violative of the equal protection clause of the U.S. Constitution because it arbitrarily denies a defendant who is not confined to jail the benefit of a jury trial to determine his competence to stand trial while granting a jury trial to confined defendants.
The state counters this contention by asserting the court had no authority to change its previous order of competency and was without statutory authority to order a jury trial of one not held in confinement. *Page 934 
It is without dispute that the conviction of an accused person while that person is legally incompetent violates the right to due process, and that State procedures must be adequate to protect that right. Bishop v. United States,350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956). Pate v. Robinson,383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).
It is equally clear that in view of Pate, supra, Pierce v.State, 52 Ala. App. 422, 293 So.2d 483 (1973), cert. quashed,292 Ala. 745, 293 So.2d 489; and Edgerson v. State, 53 Ala. App. 581, 302 So.2d 556 (1974), a trial court has an independent duty to inquire into an accused's state of mind when there are reasonable grounds to doubt the accused's competency to stand trial. The standard upon which this determination is to be made is set out in Edgerson, supra.
After the trial judge makes this initial determination, the question then arises as to whether the issue must be submitted to a jury. We find no need to address petitioner's federal constitutional arguments because our state constitution provides the answer to this question.
Article I, § 6, Ala. Const. 1901, provides, inter alia, that the accused has a right, "in all prosecutions by indictment, [to] a speedy, public trial, by an impartial jury of the county or district in which the offense was committed. . . ."
Article I, § 11, Ala. Const. 1901, provides "that the right of trial by jury shall remain inviolate." These right-to-jury-trial provisions have been in all of Alabama's Constitutions, beginning with the constitution of 1819 and including those of 1861, 1865, 1868, and 1875.
Section 11 has been interpreted to provide for the right of jury trial in those classes of cases in which that right existed at common law. Alford v. State, 170 Ala. 178,54 So. 213 (1911); W H Machine Tool Co. v. National Distill. C.Corp., 291 Ala. 517, 283 So.2d 173 (1973); Gilbreath v.Wallace, 292 Ala. 267, 292 So.2d 651 (1974). In addition, § 6.11 of Amend. No. 328, 1901 Const., ratified in 1973, provides "that the right of trial by jury as at common law and declared by § 11 of the Constitution of Alabama 1901 shall be preserved to the parties inviolate." (Emphasis supplied.)
In Edgerson v. State, 53 Ala. App. 581, 302 So.2d 556 (1974), the Court of Criminal Appeals recognized that accused persons were entitled to a jury trial at common law on the issue of competency to stand trial.
In 4 W. Blackston, Commentaries * 24-25 (1779), we find:
 "* * * Also, if a man in his sound memory commits a capital offence, and before arraignment for it, he becomes mad, he ought not to be arraigned for it; because he is not able to plead to it with that advice and caution that he ought. And if, after he has pleaded, the prisoner becomes mad, he shall not be tried; for how can he make his defence? If, after he be tried and found guilty, he loses his senses before judgment, judgment shall not be pronounced; and if, after judgment, he becomes of non-sane memory, execution shall be stayed; for peradventure, says the humanity of the English law, had the prisoner been of sound memory, he might have alleged something in stay of judgment or execution. Indeed, in the bloody reign of Henry the Eighth, a statute was made, which enacted that if a person, being compos mentis [of sane mind] should commit high treason, and after fall into madness, he might be tried in his absence, and should suffer death, as if he were of perfect memory. But this savage and inhuman law was repealed by the statute 1 and 2 P. and M., c. 10. For, as is observed by Sir Edward Coke, `the execution of an offender is for example, ut poena ad paucos, metus ad omnes perveniat [that the punishment may reach the few, but the fear of it affect all]: but so it is not when a madman is executed; but should be a miserable spectacle, both against law, and of extreme inhumanity and cruelty, and can be no example to others.' But if there be any doubt, whether the *Page 935 party be compos or not, this shall be tried by jury.
* * *"
At common law the determination of competence to stand trial was a question for the jury. In addition to the rule as stated by Blackstone, Parliament passed a statute on the subject in 1800, the Criminal Lunacy Act, 39 40 Geo. III c. 94. That statute was relied on in Rex v. Little, Russ. Ry. 430, 168 Eng.Rep. 881 (1821). Little was indicted for assault with intent to murder, but the jury found him insane both at the time of the commission of the offense and at the time of trial. The trial judge ordered him kept in custody under the section of the Criminal Lunacy Act pertaining to insanity at the time of trial, the section pertaining to insanity at the time of commission of the offense not being applicable to the case. This action was found to be correct.
In the report of Rex v. Little, supra, there appears the following summary of the statute:
 "By 39 40 Geo. III c. 94 s. 1, it is enacted, That in case any person charged with treason, murder, or felony, proving to be insane at the time of the commission of such offence, be acquitted, the jury are to declare whether he was acquitted by them on account of insanity; and if they so find the Court shall order him to be kept in custody till his Majesty's pleasure be known, c. By s. 2 it is enacted, That if, upon the trial of any person indicted for any offence, such person shall appear to the jury charged with such indictment to be insane, it shall be lawful for the Court before whom any person shall be brought to trial, as aforesaid, to direct such finding to be recorded, and thereupon to order such person to be kept in strict custody until his Majesty's pleasure be known."
Thus, both by the common law in Blackstone's time and through the later Act of Parliament, the question of whether an accused was competent to stand trial was for the jury. This right is preserved to the citizens of Alabama by § 11 of the Constitution of 1901.
We therefore conclude that the petitioner is constitutionally entitled to a jury trial on the issue of her mental competency to stand trial. The statutes in Article 2, Chapter 16, Title 15, Code 1975, should be considered modified to the extent that they are in conflict with the constitutional right to trial by jury.
The judgment of the Court of Criminal Appeals issuing the writ of mandamus is hereby reversed, and the cause is remanded to that court to issue an order consistent with this opinion.
REVERSED AND REMANDED.
All the Justices concur, except FAULKNER, J., who dissents.