518 So.2d 786 (1987)
Steve CLIFF
v.
STATE
1 Div. 246.
Court of Criminal Appeals of Alabama.
February 24, 1987.
On Return to Remand July 28, 1987.
Rehearing Denied September 8, 1987.
Certiorari Denied January 8, 1988.
*787 Paul D. Brown, Mobile, for appellant.
Charles A. Graddick, Atty. Gen., and Fred F. Bell, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 86-1613.
PATTERSON, Judge.
Appellant, Steve Cliff, was convicted of the offense of rape in the first degree in violation of § 13A-6-61, Code of Alabama 1975, and sentenced to life imprisonment in the penitentiary. He appeals, raising three issues.
Appellant contends that the trial court erred to reversal in denying his motion for a mistrial based upon the State's "purposeful, deliberate and systematic use of peremptory challenges to strike the trial jury venire to exclude young male members of the black minority race, in violation of the defendant's constitutional guarantee of trial by an impartial jury." He asserts that the prosecuting attorney used five of the State's eight strikes to strike all five *788 black male jury veniremen from the venire. He relies upon the recent decision of the United States Supreme Court in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
The record shows the following:
"THE COURT: All right, for the record, I told Mr. Brown [defense counsel] that we could take this up prior to theany testimony being taken and after the jury was selected. Now, what else would you like put in the record?
"MR. BROWN: Judge, initially I would like at this time to move for a mistrial based upon the State's use of their peremptory challenges, which once again reflects the invidious pattern of discrimination that is being practiced by the Mobile County District Attorney's office. In this trial, the Defendant, my client, Steve Cliff, is a young black male. It is my observation that in trials of young black males the District Attorney's office makes it a pattern and practice to strike from the jury
"THE COURT: That is not true in every case, but let's talk about this case. What about this case?
"MR. BROWN: In this case, Judge, the State of Alabama has stricken all of the young black males from the jury venire.
". . .
"MR. BROWN: Judge, on the State's first strike they struck number 31, which was Altory Mose, a young black male. For their second strike they struck number 34, Evelyn Nelson, a younga middle aged black female. For their third strike they struck number 43, Eugene Moseley, a young black male. For their fourth strike they struck number 32, Arthur Lee Todd, a young black male. For their fifth strike they struck number 51, John Everett, middle aged black male. Those being all the black males on the jury venire ...
"THE COURT: ... the record should also reflect that there's a black victim and there's a black defendant. I think they have every right in the world to use their strikes as they choose, ...
"MR. BROWN: Or for an evidentiary hearing, Judge, or forin the alternative for the District Attorney's office to offer an explanation as to why they so struck.
"THE COURT: They have nothey have no legal requirement to do that that I know of, but what is your motion?
"MR. BROWN: It's a motion for mistrial based upon the invidious pattern
"THE COURT: Denied.
"MR. BROWN: of discrimination.
"THE COURT: Denied. And again I say for the third time for the record, I think she's [referring to the prosecuting attorney] absolutely ridiculous in using strikes to strike blacks when there's a black victim, but if she chooses to do that, that's her right to do. And again I say for the record there's a black victim and there's a black defendant. But you have that in the record. ..."
We find that this issue has been properly preserved for our review. After a review of the facts, we are compelled to remand this cause pursuant to the holding of Batson v. Kentucky, supra; Griffith v. Kentucky, ___ U.S. ___, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); and our Supreme Court's similar ruling in Ex parte Jackson, 516 So.2d 768 (Ala.1986).
Accordingly, we remand this cause to the trial court with the instructions that if the court determines that the facts establish a prima facie case of purposeful discrimination under Batson, the court must give the prosecutor the opportunity to come forward with race-neutral explanations for her use of the peremptory strikes. If the prosecutor is unable to do so, then appellant is entitled to a new trial. See Ex parte Owens, [Ms. 85-1008, January 9, 1987] (Ala.1987); Ex parte Zackery, 521 So.2d 1 (Ala.1987); Ex parte Jackson, supra. In the event that the trial court rules that appellant is not entitled to a new trial, the court shall make written findings on this issue and forward those, along with a transcript of the hearing, to this court.
In view of our holding above, we pretermit discussion of the remaining issues raised.
REMANDED WITH INSTRUCTIONS.
All Judges concur.

*789 On Return to Remand

PATTERSON, Judge.
This court directed the Circuit Court of Mobile County, Alabama, to conduct an evidentiary hearing to determine whether the facts establish a prima facie case of purposeful discrimination under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and, if so, to allow the prosecutor an opportunity to provide race-neutral explanations for the use of her peremptory strikes in selecting the jury which convicted appellant. On remand, the trial court fully complied with the order of this court. After holding an evidentiary hearing, the trial court issued a written order, in which it made the following findings of fact:
"The State presented the testimony of Teresa Tanner Pulliam, who, at the time of trial, served as an Assistant District Attorney and was the prosecutor responsible for the State's jury selection. Ms. Pulliam addressed the striking of those five potential black jurors struck by the State and, in the opinion of the Court, articulated a nondiscriminatory reason for their exclusion.
"The defendant was accused and convicted of the Rape of Ingrid Taylor, a seventeen year old black female.
"Ms. Pulliam testified that she had tried and convicted several black Prichard residents for the murder of Booker T. Williams, a black man from Prichard, and that the resulting sentiment within that community was not favorable to the prosecution. Consequently, three black veniremen listing Prichard as their place of residence were struck.
"A fourth black potential juror, as well as one of the Prichard residents, was struck because he did not work. Ms. Pulliam stated that she regularly struck anyone who was unemployed. She further elaborated that she wanted as jurors men who were in supervisory or white collar positions, and middle class women who worked, as opposed to women from an affluent Mobile suburb, `a Spring Hill Woman.' Paul Brown, counsel for the defendant, struck five black women whom Ms. Pulliam testified she would have accepted as jurors.
"The fifth black venireman was struck because he was a man, Ms. Pulliam preferring working women as jurors, and because he was a salesman rather than a white collar worker. Two of the aforementioned Prichard residents were men, as well as laborers, and thus outside the parameters Ms. Pulliam sought.
"The duty of this Court is not to evaluate the prosecutor's subjective theory of jury selection. Rather, the sole question presently before the Court is whether the State satisfied its burden of proof and provided race neutral explanation for its peremptory strikes. The Court answers that question in the affirmative.
"After due consideration of all evidence, the Court finds as a proven fact that the exclusion of potential black jurors was not the product of racial discrimination. Rather, the prosecutor's use of peremptory strikes was based on the facts of this particular case and the characteristics, other than race, of those persons...."
At the hearing, the prosecutor testified under oath, and the trial court allowed defense counsel to cross-examine the witness. The prosecutor stated the following general criteria for striking the jury venire in this particular rape case:
"Generally in a rape case I normally have problems in judging whether I want men or women on it. Normally I prefer older white collar men, along with middle class employed women, as opposed to, in this particular case, as opposed to, say, a Spring Hill woman orand again, I'm going to strike everybody off any jury who is unemployed and, again, in this particular case, the crime was committed in The City of Prichard. Frank Dees was the investigating officer, who knows virtually everybody in Prichard and was here in the courtroom with me at the time and I struck everybody from Prichard off the jury."
We agree with the trial court that the prosecution's exclusion of black venirepersons was not the product of racial discrimination. *790 The prosecutor's use of her peremptory strikes was based on the facts of this particular case and the characteristics, other than race, of those persons challenged. We find no violation of appellant's constitutional rights in this cause.
Appellant contends the trial court erred in refusing to grant his motion for a psychiatric evaluation to determine whether he was competent to stand and whether he was insane at the time the offense was committed.
In support of appellant's motion for psychiatric evaluation, his trial attorney stated the following: "I am not a psychologist ... but based on my dealing with people, his responses were often inappropriate. Sometimes he would smile when a smile or a finding of humor was inappropriate. When I questioned him as to his inappropriate responses he became confused." Appellant's attorney further stated, "I was not able to be assisted by him in the details of this alleged offense and it's my impression from my observation of him that he is mentally incompetent and that he does have a mental problem, especially in relating to me and the aiding of him in his defense of the details surrounding this incident." Another attorney, the one who handled appellant's preliminary hearing, testified to the following:
"He was able to tell me his version as to what happened out there ... that afternoon, what he's charged with. He was not really able to assist me very much in preparing a defense for his case because he's not able to remember times very well. He sort of gets things jumbled up. He has a problem with places too. He's really not smart enough to really help you prepare for a case.... I strongly feel that he's probably very retarded."
No evidence was offered concerning appellant's sanity at the time of the commission of the offense.
A defendant does not have a right to a mental examination whenever he requests one, and, absent such a right, the trial court is the screening agent of such requests. Robinson v. State, 428 So.2d 167 (Ala.Cr.App.1982); Beauregard v. State, 372 So.2d 37 (Ala.Cr.App.), cert. denied, 372 So.2d 44 (Ala.1979). The defendant bears the burden of persuading the court that a reasonable and bona fide doubt exists as to the defendant's mental competency, and this is a matter within the discretion of the trial court. Miles v. State, 408 So.2d 158 (Ala.Cr.App.1981), cert. denied, 408 So.2d 163 (Ala.1982). In determining whether an investigation into the defendant's sanity is required, the trial court must determine if any factual data establish a reasonable ground to doubt the defendant's sanity. Beauregard, 372 So.2d at 43. Where the trial court finds that the evidence presents no reasonable grounds to doubt the defendant's sanity, the standard of appellate review is whether the trial court abused its discretion. Id.
Based on the record of proceedings before us, we find no abuse of the trial court's discretion in denying the motion. The trial court had before it, for its review, a court-ordered psychiatric evaluation of appellant by personnel at Taylor Hardin Secure Medical Facility. This evaluation was made in preparation for a prior trial on a similar offense. It was conducted approximately four months prior to the commission of the instant offense and approximately nine months prior to the instant trial. The evaluation report stated, in part, the following findings:
"During the Competency Evaluation Board Review, Mr. Cliff again presented as a nonpsychotic individual of limited intellect. He again described his behavior during the time period of the alleged offense in a manner consistent with previous accounts. He again was able to give simplistic understanding of the role of himself and others in the court process. He clearly understood that his lawyer was charged with his defense and that it was in his best interest to cooperate with his lawyer. No bizarre or unusual behavior was detected during the interview suggestive of any major psychiatric disturbance.
"....
"Based on a thorough review of all available information, Mr. Cliff now appears *791 able to assume the role of defendant and move forward in the trial process."
The board did find appellant to be of "less than average intellect" and his intellectual development to be "within the mild range of mental retardation."
In regard to appellant's claim that the evidence raised a reasonable and bona fide doubt as to his mental competency to stand trial, we find that appellant did not meet his burden of persuading the trial court, in light of the determination that he was competent nine months prior to the instant trial. In the absence of any evidence, the mere allegations by counsel that the defendant is incompetent to stand trial do not establish reasonable grounds to doubt the defendant's sanity and warrant an inquiry into his competency. Whorton v. State, 422 So.2d 812 (Ala.Cr.App.1982). See also White v. State, 346 So.2d 22, 25 (Ala.Cr. App.), cert. denied, 346 So.2d 26 (Ala.1977) (wherein the court held that "the trial judge did not err in finding that, based on the previous verdict of competency, the assertions of the appellant's counsel did not raise a bona fide doubt as to the appellant's competency to stand trial"). Moreover, evidence of some degree of mental retardation is not conclusive as to creating a reasonable doubt of mental competency. Robinson v. State, citing Persons v. State, 339 So.2d 1092 (Ala.Cr.App.1976). The trial court, after hearing the testimony, as well as observing the demeanor and conduct of appellant, was in the best position to determine any question of appellant's competency. We also find that no evidence raised a reasonable ground to doubt appellant's sanity at the time of the commission of the offense. Accordingly, we find no abuse of the trial court's discretion in its denial of appellant's motion.
Appellant asserts that the trial court abused its discretion in not giving appellant a pre-trial suppression hearing and in refusing to suppress the "written statement" of appellant.
Prior to trial, appellant's attorney filed a motion to suppress appellant's statement. No hearing was requested on the motion. The motion was denied by the trial court. However, while the court was disposing of preliminary matters on the first day of trial, appellant's attorney requested a hearing on the motion to suppress. In reply, the trial court stated, "Fine, you will have it [pre-trial hearing on the motion to suppress]." However, a hearing on the motion to suppress was never held. The record offers no explanation of why the trial court did not hold a hearing; however, there is no indication from the record that appellant further pursued the hearing. In fact, there was not even a request to voir dire Sergeant Frank Dees, who testified to appellant's statement.
An accused is entitled to a hearing on the voluntariness of his confession. However, an accused is not entitled to a hearing outside the presence of the jury unless he specifically requests one. Felder v. State, 470 So.2d 1321 (Ala.Cr.App.1984). The burden is not on the trial court to withdraw the jury, hear evidence on the question of voluntariness of a confession outside the jury's presence, and expressly rule. Carroll v. State, 370 So.2d 749 (Ala.Cr.App.), cert. denied, 370 So.2d 761 (Ala.1979). The trial court, in monitoring the proceedings during the trial, is capable of determining the voluntariness of the confession. Sullivan v. State, 394 So.2d 76 (Ala.Cr.App. 1981). In the instant case, the trial court found the confession to be voluntary, absent a hearing. While the better practice is for the trial court to initially hear evidence on the question of the voluntariness of a confession outside the presence of the jury, Duncan v. State, 278 Ala. 145, 176 So.2d 840 (1965), we find no error with the procedure the trial court utilized in the instant case, especially in light of appellant's acquiescence in the procedure of his trial.
In contending that the trial court erred in not suppressing his statement, appellant argues that his statement was not voluntary because (1) he "was illiterate and mentally retarded" and (2) the interrogating officer failed to insure the protection of his constitutional rights by having witnesses present and using a tape recorder during his statement.
*792 Appellant's argument is without merit. It is well settled that "the mere fact that an appellant is `functionally illiterate' or simpleminded will not vitiate the `voluntariness' of his confession." Berry v. State, 399 So.2d 354, 355 (Ala.Cr.App. 1981). The low mentality of appellant should go to the weight and credibility of the confession rather than to its admissibility. Elrod v. State, 281 Ala. 331, 202 So.2d 539 (1967).
We further find that appellant's confession is not involuntary due to the lack of witnesses or tape-recording. In Hill v. State, 372 So.2d 405 (Ala.Cr.App. 1979), the court found that a confession taken in a room where no one was present but the interrogating officer and the defendant was voluntary where the interrogating officer fully explained and read to the defendant his rights and no intimidation occurred and no inducement was offered to get defendant to make a statement. We have found no cases which mandate the use of a tape recorder in taking a defendant's statement. In fact, in this state, primary evidence of a confession is both the written statement and the oral testimony of a witness who heard the statement. Fleming v. State, 57 Ala.App. 556, 329 So.2d 616 (1976).
The voluntariness of a confession is determined by the trial court in the exercise of enlightened discretion, and its decision will not be disturbed unless it is palpably contrary to the great weight of evidence. Burks v. State, 353 So.2d 539 (Ala.Cr.App. 1977). The trial court need only be convinced by the preponderance of the evidence that the confession was voluntarily made. Manigan v. State, 402 So.2d 1063 (Ala.Cr.App.1981). In the instant case, the evidence in this record fully supports the trial court's ruling that the confession was voluntarily given by appellant after a knowing and intelligent waiver of his Miranda rights. It is to be noted that appellant did not testify at any time during the trial and did not offer any evidence on his behalf.
Appellant finally contends that a mistrial should have been granted "based on the actions of the State in eliciting the illegal responses from the interrogating officer as to the ultimate issue." Specifically, appellant made the motion for a mistrial after the officer read to the jury the following question asked appellant at the time he gave his statement: "Steve, why did you rape the young lady?" In response to appellant's motion, the trial court stated the following:
"No, I don't grant that mistrial, but the whole thing for the jury to decide is the question of rape. So, you can't refer to that asin that manner. Now, if you all want to figure out some other way to do it, fine. But it's not up to this officer to say that there was a rape and that's the ultimate question for the jury to determine."
As is evidenced by the record, the officer never read appellant's answer to the question. The record indicates that appellant did not move to exclude the question, did not request the judge to voir dire the jury to see if the question was ineradicable from their minds, and did not ask for further instruction.
"It is a basic premise that when prejudicial remarks have been made the trial judge is in a better position than is an appellate court to determine whether the remarks were so prejudicial as to be ineradicable." Kendrick v. State, 444 So.2d 905, 909 (Ala.Cr.App.1984). In the instant case, the trial court's denial of the motion for mistrial, therefore, should not be disturbed.
Based on the foregoing, this cause is due to be affirmed.
AFFIRMED.
All Judges concur.