BOWEN, Judge.
Eugene Brown was convicted for murder, in violation of Ala.Code, § 13A-6-2, and was sentenced to life imprisonment. He raises two issues of this appeal from that conviction. He contends that the trial court erred in adjudging him competent to stand trial and that the court erred in failing to hold a competency hearing prior to trial.
The facts in this case are listed below in chronological order.
January 8, 1988 The indictment was returned.
Date unknown Defense counsel filed a motion to have the defendant evaluated to determine if he was competent to stand trial.
February 26, 1988 The trial court granted the defendant’s request that the Veteran’s Administration Hospital in Tuskegee, Alabama, be required to produce a copy of the defendant’s medical records indicating a past or present history of mental illness and treatment for mental illness.
Date unknown Defense counsel filed a request for mental examination, which was granted. The defendant, however, did not cooperate with the evaluation, and none was conducted.
April 11, 1988 Defense counsel filed a “motion for hearing on competency of defendant to stand trial.” This motion was set, but, due to an unexpected illness of defense counsel, the hearing was postponed.
June 17, 1988 The sheriff of Montgomery County filed a petition requesting authorization to commit the defendant to the custody of the Department of Mental Health, or to have him medically evaluated and treated for medical problems, and the sheriff also request *563 ed authorization to force-feed the defendant, who had been refusing to eat. After an emergency hearing, the trial judge found that the defendant was “incompetent at this time to rationally and intelligently determine his medical and nutritional needs.” The court ordered the defendant transferred to an appropriate medical facility in Montgomery County for him to be evaluated and tested for malnutrition and any other medical problems which might be diagnosed.
In its order, the trial court found that the defendant had been incarcerated since November 2, 1987; that his mental condition was normal at the time of commitment; that beginning on June 8, 1988, his behavior became bizarre (“In summary, the records reflect that Brown has eaten with his hands, not utensils and that he dipped his food in the commode and ate it, and that he drank water from the commode.”); that the defendant was not eating because of his probable mental illness; that the defendant, who weighed 150/160 pounds on commitment, then weighed 103 pounds; that the defendant was probably suffering from paranoia and was probably psychotic; that he had refused medical treatment; and that, at the hearing, the defendant exhibited signs of mental illness by reporting that voices were speaking and people were hollering.
June 18, 1988 The defendant was transferred to Baptist Medical Center, where he was treated by Dr. Roy Pasker. Dr. Pasker found the defendant to be suffering from “mood disorder, major depression with psychotic thinking.” He recommended that the defendant be transferred to a forensic psychiatric facility “to further treat his psychiatric difficulty which is evident at the present time.”
June 21, 1988 The trial court found that “the defendant is, at this time, incompetent to stand trial and in need of psychiatric treatment to restore him as competent to stand trial.” The court ordered the defendant transferred to the Taylor Hardin Secure Medical Facility.
October 4, 1988 The defendant was released by the secure medical facility. The forensic evaluation report dated September 30, 1988, concluded that the defendant “has a more than adequate ability to assist his attorney in his own defense.” The report also concluded that “although he was likely showing some symptoms of his mental illness at the time of the alleged offense, his condition was not severe enough to substantially impair his ability to understand the consequences of his acts or to conform his behavior to the requirements of law.” The defendant was diagnosed as “schizophrenia, paranoid type, chronic ... presently essentially in remission of these symptoms.” The report noted that the defendant “has a well-documented history of mental problems that has led to hospitalization on at least six different occasions .... His hospitalizations have usually been for less than six weeks, although he did remain for nearly four months one time.” The defendant gained approximately 40 pounds in a three-month period while at the secure medical facility.
This report further noted that the defendant “continues to show evidence of suspicious and paranoid thinking and at times makes claims that appear to be rather exaggerated. However, it is very difficult to determine whether he is consciously making up or exaggerating these stories or whether these are actually delusional ideas.”
October 6, 1988 The defendant was returned to the Montgomery County detention facility.
February 16, 1989 The defendant, with new defense counsel, filed a motion to be reevaluated at Taylor Hardin Secure Medical Facility. This motion alleged that the defendant had regressed to his former psychotic state following his return to the Montgomery County detention facility. This motion requested that a hearing be held to de *564 termine the defendant’s competency, that the defendant be returned to the Taylor Hardin Secure Medical Facility for reevaluation, and that a continuance be granted.
February 21, 1989 The defendant’s motion for a reevaluation was heard and denied immediately prior to trial. The trial judge (who was not the same judge who had presided over the earlier proceedings in this case) questioned the defendant, who stated that he was not insane, that he did not want to plead insanity, that he and his attorney “are not together on it,” and that he “didn’t do the crime.” The trial judge stated that the defendant “apparently understands what the issues concerning his possible defenses are, and that he’s made what appears to me an informed choice in the matter.”
At this hearing, defense counsel contended that the defendant had regressed since his return to the county jail. This contention was based on counsel's own contact and dealings with the defendant and upon what counsel had been told by Eleanor McCartha and Shirley Arndt, nurses at the Montgomery County detention facility. Other than the questioning of the defendant by the trial court, defense counsel presented no testimony at this hearing.
The record at this hearing shows that the defendant was examined on February 20, 1986, by a psychologist from Taylor Hardin Secure Medical Facility.
At trial, Nurse McCartha testified as a defense witness. She stated that, by December 1988, the defendant had regressed and had gone “down hill a little.” Since December, the defendant had not regressed a great deal but he had not “gotten any better either.”
Nurse Arndt testified that, in December 1988, the defendant was “beginning to regress.” She stated that he “appear[ed] depressed,” refused to take his medication, sometimes refused to eat, appeared withdrawn and “would be making inappropriate movements with his hands, kind of like he was talking to himself or maybe hearing voices.” She stated that he was “better off when he came to jail the first time [November 1987]."
At trial, the defendant invoked his attorney-client privilege and refused to allow his former attorney to testify in his defense to the effect that the defendant was “wacky.”
Dr. Wilburn H. Rivenback, the staff psychologist and certified forensic examiner who prepared the forensic evaluation report of September 30, 1988, was called as a defense witness. He testified that he felt that the defendant was mentally incompetent to stand trial when the defendant first came to Taylor Hardin Secure Medical Facility in June 1988, and that the defendant was suffering from a mental illness at the time of the crime but that the defendant was “not that impaired” and “was capable of understanding the rightfulness and wrongfulness of the act.” He stated that the defendant’s mental illness at the time of the crime was not severe enough to render the defendant substantially unable to comprehend the nature and consequences of his act or to conform his behavior to the requirements of the law.
At trial, the defendant testified in his own behalf over the objection of his counsel. He stated that someone had come into the room, taken one of the two pistols he was carrying, and shot the deceased with the defendant’s weapon. Afterwards, the defendant felt like he had been “drugged.” The defendant maintained that he had been “framed” for the murder.
“A second determination of the defendant’s competency to stand trial may be required under the same circumstances as an original determination would be required, that is, where there exist facts which raise a reasonable and bona fide doubt of the defendant’s competency.” Miles v. State, 408 So.2d 158, 162 (Ala.Cr.App.1981), cert. denied, Ex parte Miles, 408 So.2d 163 (Ala.1982). “The defendant bears the burden of persuading the court that a reasonable and bona fide doubt exists as to the defendant’s mental competen *565 cy.” Cliff v. State, 518 So.2d 786, 790 (Ala.Cr.App.1987).
This court has been reluctant to find that trial courts have abused their discretion in failing to order further investigation into a defendant’s competency to stand trial where there has been some previous determination or finding of competency. Cliff, 518 So.2d at 790-91; Blevins v. State, 516 So.2d 914, 915 (Ala.Cr.App.1987); Wisdom v. State, 515 So.2d 730, 733-34 (Ala.Cr.App.1987); Miles, 408 So.2d at 161-62; Wherry v. State, 402 So.2d 1130, 1134 (Ala.Cr.App.1981); Nelson v. State, 405 So.2d 392, 394 (Ala.Cr.App. 1980), reversed on other grounds, 405 So.2d 401 (Ala.1981); Holland v. State, 376 So.2d 796, 801-02 (Ala.Cr.App.), cert. denied, Ex parte Holland, 376 So.2d 802 (Ala.1979); Atwell v. State, 354 So.2d 30, 35-36 (Ala.Cr.App.1977), cert. denied, Ex parte Atwell, 354 So.2d 39 (Ala.1978).
We recognize that “a trial court has an independent duty to inquire into an accused’s state of mind when there are reasonable grounds to doubt the accused’s competency to stand trial.” Ex parte LaFlore, 445 So.2d 932, 934 (Ala.1983). However, under the circumstances of this case, we find that the trial court did not err in denying the defendant’s motion of February 16, 1989, for a competency hearing. This motion was filed only five days before the case was scheduled for trial, although there was evidence presented at trial that the defendant had “regressed” by December 1988. This motion was argued immediately prior to trial. Defense counsel made a showing of the expected testimony of Nurses McCartha and Arndt and explained to the court the difficulty of presenting an insanity defense for the defendant, whom he considered incompetent, while the defendant was maintaining that he was not insane. At trial, the jury was instructed on the defense of insanity.
The trial judge personally questioned the defendant and only after such questioning did he conclude that the appellant has “made what appears to me an informed choice in the matter.”
From the record before this court, it does not clearly and convincingly appear that the defendant was incompetent to stand trial. Neither does the record show that the trial judge abused his discretion by failing to order a second evaluation of the defendant. In reaching these conclusions, this court has carefully considered the entire record, including the testimony regarding the defendant’s mental condition presented at trial.
Consequently, we hold that the trial court did not err in adjudging the defendant competent to stand trial and that it did not err in failing to hold a competency hearing prjor to trial. We note that the defendant did not request a jury trial on the issue of competency, Ex parte Neal, 551 So.2d 933 (Ala.1989); Ex parte LaFlore, supra, and has not on appeal made any contention that he should have a jury determine the issue of competency.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.