Rodney Currin was convicted for the murder of John Byars and sentenced to twenty years' imprisonment. Two issues are raised on this appeal from that conviction.
 I
The appellant argues that the State's evidence is insufficient to sustain a conviction. This argument is based primarily on inconsistencies in the testimony of various State witnesses.
The prosecution connected the appellant to the murder through both direct and circumstantial evidence. In a confession, the appellant admitted that he and Robert Savage went to Byars' farm "to hit Mr. Byars in the head and take his money." At the farm, the appellant got a rifle out of Byars' truck and Savage shot Byars. Later, the appellant threw the rifle in a creek. Additionally, the appellant made statements to other people implicating himself in the murder both before and after the crime. Perry Johnson testified that about a week or two before the murder he heard Savage state, in the appellant's presence, "Let's go knock [Byars] in the head." A couple of days after the crime, Johnson asked the appellant "did they do it and he said yeah, but he wasn't the one that killed him, though." Charles Curtis testified that the day after the murder the appellant asked him "how many years could you get for killing a man."
The appellant is actually arguing the weight rather than the sufficiency of the evidence. Here, the "holes" and inconsistencies in the State's case presented credibility issues for the jury. The motion for judgment of acquittal was properly denied.
"The weight of the evidence, the credibility of the witnesses, and inferences to be drawn from the evidence, where susceptible of more than one rational conclusion, are for the jury alone." Willcutt v. State, 284 Ala. 547,549, 226 So.2d 328, 330 (1969). In reviewing a conviction based on circumstantial evidence, "[t]he test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude." Cumbo v. State, 368 So.2d 871, 874
(Ala.Cr.App. 1978), cert. denied, Ex parte Cumbo,368 So.2d 877 (Ala. 1979). Where the prosecution presents a prima facie case of the crime charged in the indictment, contradictory and conflicting testimony presented by State witnesses presents an issue of credibility which should be submitted to the jury. Britain v. State,518 So.2d 198, 200-201 (Ala.Cr.App. 1987). "It is not necessary for a conviction that the defendant be proved guilty to the 'exclusion of every possibility of innocence.' " Burks v.State, 117 Ala. 148, 23 So. 530, 530 (1898). "[F]acts and circumstances tending prima facie to prove the corpus delicti may be aided by the admissions or confessions of accused so as to satisfy the jury beyond a reasonable doubt, and so to support a conviction of guilt." Rowe v.State, 243 Ala. 618, 622-23, 11 So.2d 749 (1943).
 II
The appellant is black. The victim was white. The appellant alleges a violation of the principles of Batson v.Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986), in that the district attorney *Page 223 
used seventeen of his eighteen strikes to remove blacks from the jury. Initially, it must be observed that the appellant's motion was untimely. Here, the jury had already been sworn, given preliminary instructions on the trial of the case, and released for lunch before the motion was made. The proper time to raise such an objection is after the peremptory strikes have been made but prior to the jury's being sworn.Williams v. State, 530 So.2d 881 (Ala.Cr.App. 1988).Swain v. State, 504 So.2d 347, 349 (Ala.Cr.App. 1986).
In defending the exercise of his peremptory challenges, the prosecutor noted that defense counsel struck all whites with his 18 peremptory challenges, that the population of Wilcox County is 70% black, that the majority of the members of the venire were black, and that the trial jury was composed of seven whites and five blacks. The prosecutor stated the reasons for his strikes: (1) single, unemployed, and area of residence; (2) wearing sunglasses in courtroom, hostile in answering questions and did not communicate well; (3) believed to be a "kinsman" to accused in a rape case prosecuted earlier in week; (4) sitting near appellant's people, did not communicate well, laughing or amused with State's questions; (5) did not disclose prior criminal arrest for "paternity"; (6) black sheriff of Wilcox County recommended juror be struck, believed to be involved in forgery case, single and unemployed, (7) single, young, and unemployed; (8) not very bright, would not understand accomplice theory, extremely overweight, unemployed, and not married; (9) older, single, argumentative, chewing gun, talking, sitting next to appellant's people; (10) law enforcement recommended to strike, did not like being a witness in another case, lives in general area of crime and knows about it but did not reveal such knowledge; (11) a preacher or pastor; (12) unemployed and unmarried; (13) law enforcement recommended strike, sister to a local criminal suspected of double murder; (14) law enforcement recommendation, either she or her immediate family has had several felony arrests; (15) law enforcement recommendation, resides in area of crime, connected with recently charged individuals; (16) from area of crime, young, single, unemployed; and (17) old, unemployed prosecutor knew very little about. The State used its last strike to remove a young and single white female.
The co-defendant, Savage, had previously been tried by an all-black jury, convicted of manslaughter, and sentenced to 10 years' imprisonment.
This case was tried after the decision in Batson v.Kentucky was issued but before our state supreme court decided Ex parte Branch, 526 So.2d 609 (Ala. 1987). The trial judge did not make any finding that the defendant had established a prima facie case of discrimination. After considering the prosecutor's reasons for the challenges, the trial judge found that the defendant's motion was "not well taken."
 "[A]ppellate review should not become bogged down on the question of whether the defendant made a prima facie showing in cases where the [trial] court has required an explanation. Taking our cue from Batson's repeated analogies to Title VII jurisprudence, 106 S.Ct. 1721 n. 18, 1722 n. 19, 1724 n. 21, we hold that when the prosecution's explanation is of record, we will review only the [trial] court's finding of discrimination vel non." United States v. Forbes, 816 F.2d 1006, 1010 (5th Cir. 1987).
The record sufficiently demonstrates that the prosecutor did not use his peremptory challenges in a racially discriminatory fashion. See Harris v. State [6 Div. 336, April 26, 1988] (Ala.Cr.App. 1988). "Failure by a prosecutor to explain every peremptory strike of black jurors is not necessarily fatal to the prosecutor's ability to rebut a prima facie case; likewise, explanation of most of the strikes on nonracial grounds does not necessarily rebut the inference created by Batson that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' "United States v. David, 803 F.2d 1567, 1571 (11th Cir. 1986). *Page 224 
See also United States v. Forbes, 816 F.2d at 1011.
Any inferences arising from the use of peremptory strikes to remove blacks should be viewed together with "other relevant circumstances," Batson v. Kentucky,476 U.S. at 96, 106 S.Ct. at 1723, to determine whether purposeful discrimination has occurred. It is significant, and a highly "relevant circumstance" that blacks were represented on the trial jury in virtually the same and in even a somewhat greater proportion (71%) as they were represented in the county population (70%). CompareUnited States v. Woods, 812 F.2d 1483 (4th Cir. 1987) (racial composition of jury reflected that of community);United States v. Allen, 666 F. Supp. 847 (E.D. Va. 1987) (proportion of blacks on jury [25%] almost identical to that of general geographic area [28%]). See also Aldridgev. State, 258 Ga. 75, 365 S.E.2d 111 (1988) (percentage of blacks on jury [25%] somewhat higher than percentage of blacks on original venire [24%]); United States v.Forbes, supra (black/white ratio on jury same as black/white ratio on venire).
It is also an "other relevant circumstance" that the State's last strike was used to remove a white female for some of the same reasons given by the State to remove blacks. "A reasonable conclusion, considering all of the facts and circumstances surrounding the jury selection process in this case, is that [the prosecutor] applied the racially-neutral criteria of education, employment, and demeanor toall jurors, whether black, [or] white. . . ."United States v. Allen, 666 F. Supp. at 854.
While some of the prosecutor's reasons for striking venirepersons might be suspect under other circumstances, under the facts of this case we find that the defendant's motion was properly denied. See Funches v. State,518 So.2d 781, 783 (Ala.Cr.App. 1987); Cliff v.State, 518 So.2d 786 (Ala.Cr.App. 1987) (certiorari denied by Alabama Supreme Court after Ex parteBranch, supra) (young, single, and unemployed jurors struck). See also United States v. Cartlidge,808 F.2d 1064, 1070-71 (5th Cir. 1987) (young, single, and unemployed proper reason under particular facts; avoided eye contact with prosecutor; brother had been convicted of robbery); United States v. Mathews, 803 F.2d 325
(7th Cir. 1986), reversed on another ground, ___ U.S. ___,108 S.Ct. 883, 99 L.Ed.2d 54 (1988) (juror "had demonstrated a pointed disinterest in the proceedings evidenced not only by her tardiness but also by her posture and demeanor");People v. King, 195 Cal.App.3d 923, 241 Cal.Rptr. 189,196 (1987) (proper to strike an older man under particular facts of the case); State v. Wylie,10 Conn. App. 683, 525 A.2d 528, 535, cert. denied,204 Conn. 807, 528 A.2d 1154 (1987) (juror had "knowledge of the general area [of the crime], including the store from which the defendant had exited"); Henderson v. State,257 Ga. 434, 360 S.E.2d 263 (1987) (juror did not disclose knowledge of case and acquaintance with key witnesses);Lockett v. State, 517 So.2d 1346, 1350 (Miss. 1987) (juror "wore a hat in the courtroom . . . and his general demeanor suggested to the prosecutor that he was unstable, unconcerned, and had no respect for the proceedings"; another juror, a minister, "was removed because of the perceived sympathy of ministers toward the accused in a criminal prosecution"); Garza v. State, 739 S.W.2d 374
(Tex.App. 1987) (prosecutor had prior experience with juror on grand jury); Taitano v. Commonwealth, 4 Va. App. 342, 358 S.E.2d 590, 593 (1987) (juror lived near the scene of the crime or in area of "high crime generally").
Batson requires this court to give the trial court's determination "great deference." 476 U.S. at 98,106 S.Ct. at 1724. Like the California court in People v.Wheeler, 22 Cal.3d 258, 282, 148 Cal.Rptr. 890,583 P.2d 748 (1978), we "rely on the good judgment of the trial courts to distinguish bona fide reasons for such peremptories from sham excuses belatedly contrived to avoid admitting acts of group discrimination."
The judgment of the circuit court is affirmed.
AFFIRMED. *Page 225 
TYSON, TAYLOR and McMILLAN, JJ., concur.
PATTERSON, J., concurs in result only, without opinion.