Roderick Bernard Reese was charged in two separate indictments with the attempted murders of Vickie Boackle and Willie Smith, both officers of the Birmingham Police Department. The indictments were consolidated for trial and the defendant was convicted and sentenced to life imprisonment on each charge. He raises six issues on this appeal of those convictions.
 I
First, Reese claims that the trial court erred by denying his motion for a psychological evaluation of his competency to stand trial. Defendant's trial began on March 21, 1988. On March 12, he wrote the following note and tied his belt to the overhead sprinkler system in his jail cell and tried to hang himself.
"Suicide Note
 "I'm tired of being locked up like some kind of animal. I'd rather be dead. To the guard that finds me make sure I'm dead before you let me down. I know it sounds crazy but it's what I want. Please. I'm just tired of being locked up that's all. Tell my family I'm sorry for what I've done and that I love them and I'll [see] them in Heaven.
I'[m] taking 14 different kinds of pills so if I don't hang in time at least I'll O.D. by the time ya'll find me. I'[m] suppose to go to court of [sic] the 21st and I'm not gonna take no years if six months is not enough then I'm sorry that's just to[o] bad. I w[o]n't even give them the pleasure of it. If I thought I'd get a fair trial or probation I'd hang around. Tell my kids I love them and I'll see them when they join with the Lord. Let my family read this note or they w[o]n't believe I killed myself. They w[o]n't believe ya'll.
"I'm not crazy. I just want to be free.
"Roderick"
On March 16, at the request of the trial judge, Mrs. Donna Click, a psychiatric social worker with the Jefferson County jail, interviewed Reese to determine his competency to stand trial. Over defense counsel's objection that Mrs. Click was not qualified to give an opinion on Reese's competency because she was not a licensed psychiatrist, the trial court received Mrs. Click's testimony.
Mrs. Click stated that as a result of her interview with Reese she determined that he was oriented and able to answer questions, and, that although he was "concerned and worried about this case," he had no underlying psychiatric problems and did not need further examination. She testified that in her opinion Reese was competent to stand trial.
Defense counsel informed the court that, prior to the suicide attempt, Reese had *Page 150 
been "very cooperative, very interested" in preparing for trial. Following the attempt, however, Reese was "depressed and despondent" and "very lackadaisical about his circumstances." Counsel stated that, based on his 15 years' experience in handling criminal cases, it was his opinion that Reese "was not able to fully and adequately assist in his defense" and "needed to be seen by someone better capable of rendering an opinion as to competency."
In response, the prosecutor argued to the trial court that Reese's suicide attempt was a "charade," and an attempt to avoid trial because it was "staged" at a time when a jailer was making a routine check of the cell block. Defense counsel responded that there was no indication that Reese knew the guard was making his rounds at the time of the hanging and concluded that "the sole fact that you have a[n apparent] suicide attempt is reason enough to order psychiatric evaluation."
"The test for determining competency to stand trial is whether the defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.' Dusky v.United States, 362 U.S. 402, 402, 80 S.Ct. 788, 789,4 L.Ed.2d 824 (1960); Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896,43 L.Ed.2d 103 (1975)." Anderson v. State, 510 So.2d 578, 579
(Ala.Cr.App. 1987). Ala. Code 1975, § 15-16-21, provides, in pertinent part:
 "If any person charged with any felony is held in confinement under indictment and the trial court shall have reasonable ground to doubt his sanity, the trial of such person for such offense shall be suspended until the jury shall inquire into the fact of such sanity. . . ."
This section authorizes the trial court to make a preliminary determination (without the aid of a jury) as to whether there are reasonable grounds to doubt the defendant's competency to stand trial. Ex parte LaFlore, 445 So.2d 932, 934 (Ala. 1983);Richardson v. State, 354 So.2d 1193, 1196 (Ala.Cr.App. 1978). The trial court is, thus, the "screening agent" for mental examination requests. Livingston v. State, 419 So.2d 270, 274
(Ala.Cr.App. 1982).
The trial judge should consider any information bearing on the question of a defendant's mental state in making his determination, Buttram v. State, 338 So.2d 1062, 1064
(Ala.Cr.App. 1976). Defense counsel's description of his client's emotional condition is relevant, but not entitled to conclusive effect. Williams v. State, 386 So.2d 506, 510-11
(Ala.Cr.App. 1980). Nor is a suicide attempt conclusive evidence of a defendant's inability to understand the nature of the proceedings against him and to aid in his own defense.Dixon v. State, 357 So.2d 690, 699 (Ala.Cr.App. 1978).
In the present case, it is apparent that the trial court considered all information bearing on Reese's mental condition, and concluded that he had not met his burden of showing a reasonable doubt about his competence so as to warrant further examination, see Waldrop v. State, 459 So.2d 953, 955
(Ala.Cr.App. 1983), affirmed, Ex parte Waldrop, 459 So.2d 959
(Ala. 1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2050,85 L.Ed.2d 323 (1985). "It is left to the discretion of the trial court as to whether there is a reasonable or bona fide doubt as to sanity and, thus, whether a further examination is required." Id. In consideration of all the information presented to the trial judge, we cannot say that the denial of the motion for psychological evaluation constituted an abuse of discretion.
 II
Prior to trial, the defense requested a continuance on two grounds: (1) to have Reese's competency to stand trial evaluated and (2) to locate two absent defense witnesses. The trial court's denial of the continuance on the first ground was not error because, as we have set out in Part I, the court was within its discretion in determining that there existed no reasonable ground to doubt Reese's competency. We now find that the second ground of the motion for continuance was also without merit. *Page 151 
The shooting of the two police officers in this case occurred about 3:00 o'clock on the morning of September 16, 1987. At trial, Reese presented an alibi defense, testifying that at the time in question he was asleep at the home of a friend, Ms. Carol Taylor. On the morning of the offense, the investigating officers interviewed Mr. William Smith, who claimed to have seen the shooting from a nearby convenience store. The defense subpoenaed Carol Taylor and William Smith and both subpoenas were returned "not found." Reese stated that he had last spoken to Ms. Taylor in December of 1987, and that he had been trying without success to locate her for three months prior to trial. Her telephone had been disconnected and Reese did not have her current address.
The District Attorney informed the court that his office had been trying, also without success, to locate Mr. Smith. Smith's telephone had likewise been disconnected. The District Attorney talked with Smith the morning of the shooting and he described Smith as "nutty as a fruitcake," arguing that any testimony he might give would be incompetent. Smith had mentioned that he went to the Western Mental Health Center, but upon contacting officials at that facility, the District Attorney learned that they had no knowledge of Smith's whereabouts.
In Ex parte Saranthus, 501 So.2d 1256 (Ala. 1986), our Supreme Court set out the test for determining whether a continuance should be granted on the ground of an absent witness:
 "If the following principles are satisfied, a trial court should grant a motion for continuance on the ground that a witness or evidence is absent: (1) The expected evidence must be material and competent; (2) there must be a probability that the evidence will be forthcoming if the case is continued; and (3) the moving party must have exercised due diligence to secure the evidence." Saranthus, 501 So.2d at 1257.
While we assume for present purposes that the first and third parts of the Saranthus test were met here, we conclude that the trial court did not abuse its discretion in denying the continuance based upon Reese's failure to satisfy the secondSaranthus requirement. There was absolutely no showing that, if a continuance were granted, either Ms. Taylor or Mr. Smith could be located. In fact, all indications pointed to the contrary. Since even the State's efforts to find Mr. Smith had proved futile, and Reese's three-month attempt to locate Ms. Taylor had been fruitless, the trial court could rightly conclude there was no "probability" that these witnesses would be forthcoming if the case were continued. "A motion for a continuance in a criminal case is addressed to the sound discretion of the trial court, the exercise of which will not be disturbed unless clearly abused." Fletcher v. State,291 Ala. 67, 68, 277 So.2d 882, 883 (1973); Butler v. State,285 Ala. 387, 393, 232 So.2d 631, 635 (1970), cert. dismissed,406 U.S. 939, 92 S.Ct. 1807, 32 L.Ed.2d 140 (1972) ("unless a gross abuse of the court's prerogative is shown").
 III
Reese argues that the State exercised its peremptory strikes in violation of Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Initially, there were eight black persons on the venire. The prosecutor used three of his seven strikes to remove blacks. Five black persons remained on the jury. The trial court denied the motion, ruling that Reese had not established a prima facie showing of purposeful racial discrimination.
We reject the Attorney General's argument that this issue has not been properly preserved for review because theBatson motion was made after the jury was empanelled. The record does reflect that the jury had been empanelled — though not sworn — at the time of the motion. Following the trial judge's ruling on the motion, the jury was dismissed until the following morning, at which time they were sworn. Under these circumstances, the motion was timely. We have held repeatedly that in order to be timely, a Batson motion must be made prior to the jury's being sworn. *Page 152 See White v. State, 549 So.2d 524 (Ala.Cr.App. 1989); Williamsv. State, 530 So.2d 881 (Ala.Cr.App. 1988), cert. denied,Williams v. Alabama, ___ U.S. ___, 109 S.Ct. 1159,103 L.Ed.2d 218 (1989); Swain v. State, 504 So.2d 347, 349 (Ala.Cr.App. 1986). See generally Bell v. State, 535 So.2d 210 (Ala. 1988).
The one exception to this rule appears to be found inThornton v. State, 513 So.2d 83, 85 (Ala.Cr.App. 1987), wherein this court held that, although the motion was made prior to the jury's being sworn, it was untimely because when the jury was empanelled defense counsel announced "satisfied," and he waited until the following day, after the remaining members of the venire had been dismissed, to challenge the jury selection process. That situation was not present here.
The trial court's ruling that a prima facie case of purposeful discrimination had not been established is due to be upheld. In order to make a prima facie showing, a defendant must establish "(1) 'That he is a member of a cognizable racial group'; (2) 'That the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race'; and (3) 'That these facts and any other relevant circumstances raise an inference that the prosecutor used that practice [peremptory challenges] to exclude veniremen from the petit jury on account of their race.' " Swain v. State,504 So.2d 347, 350 (Ala.Cr.App. 1986) (quoting Batson v. Kentucky,476 U.S. at 80, 106 S.Ct. at 1713). Although the first two parts of the test — that the defendant is black and that blacks were struck from the jury — were satisfied, the third was not. Defense counsel made the following statement about the prosecutor: "Your Honor, I would like to make a Batson Motion, and I'm making it with nothing personal directed against Mr. Barber [District Attorney]. I have known him for a great number of years. I know him personally, and I know he does not display prejudice against black people." Because defense counsel negated any racial animus on the part of the prosecutor, the trial court had a clear basis for concluding that the District Attorney had not used his peremptory challenges to exclude blacks from the jury solely on account of their race.
The trial judge made the following ruling: "The Court is not satisfied that a prima facie case under Batson is shown. Unless y'all want to argue it, I don't see any need to have Mr. Barber give any reasons for striking three out of eight." The District Attorney, nevertheless, then outlined his reasons for striking the three black venireperons, and the trial court reiterated its earlier conclusion: "I'm not satisfied that there was a prima facie showing under Batson. . . . Let's proceed."
In Currin v. State, 535 So.2d 221, 223 (Ala.Cr.App. 1988), cert. denied, Ex parte Currin, 535 So.2d 225 (Ala. 1988), this court noted that, when the prosecutor states his reasons for striking black jurors, the appellate court should not become "bogged down" with the question of whether a prima facie case of purposeful discrimination has been made. Instead, it should normally proceed to determine the validity of the reasons given. Although the State's attorney gave his reasons for striking blacks here, as in Currin, we will not examine the validity of those reasons as we did in Currin. The distinction between this case and Currin lies in the fact that here the trial court specifically ruled, prior to any reasons having been given, that the defendant had not established a prima facie case. In Currin, no such ruling was made. Therefore, we could not tell from the judge's ultimate denial of the motion, in Currin, whether he found that the defendant failed to make a prima facie showing, or whether he found that the State's reasons were racially neutral. Here, we know the basis for the court's ruling and we hold that it was not "clearly erroneous." See Ex parte Branch, 526 So.2d 609, 625 (Ala. 1987). Under these circumstances, we need not, and in fact should not, examine the prosecutor's reasons themselves.
 IV
Reese claims that the State did not prove the chain of custody of certain evidence *Page 153 
at trial, specifically, the shirts and bulletproof vest worn by officers Smith and Boackle when they were shot, and the five identification cards allegedly given by Reese to the officers when they stopped his vehicle for a traffic violation. This issue is without merit.
Immediately following the shooting, officers Smith and Boackle were taken to the hospital for emergency treatment. They were placed in separate rooms to which medical personnel had access. Their clothing and other belongings were removed by members of the medical staff, dropped on the floor, and retrieved by police officers stationed outside the rooms.
Reese argues that there was a gap in the chain of custody of this clothing because no one other than the medical staff saw the wounded officers being undressed and, therefore, no one who testified for the State knew whether the clothing or I.D. cards had been tampered with prior to their being retrieved by the officers waiting outside the victims' rooms.
For the few moments that the evidence was within the purview of the medical staff who did not testify to their parts in the chain of custody, there was only the remotest possibility of substitution, alteration, or tampering. Evidence momentarily unattended in a hospital setting to which only medical personnel have access is admissible, if otherwise sufficiently authenticated. See McIntosh v. State, 443 So.2d 1275 (1983), reversed on other grounds, Ex parte McIntosh, 443 So.2d 1283
(Ala. 1983). (Ala. 1983) (slide delivered to lab reception area and momentarily unattended admissible); Baynes v. State,423 So.2d 307, 311 (Ala.Cr.App. 1982) (panties thrown by rape prosecutrix into clothes hamper, and rape kit unattended for hours in hospital both admissible over chain of custody objection).
 "The purpose for requiring that the chain of custody be shown is to establish to a reasonable probability that there has been no tampering with the evidence. Williams v. State, 375 So.2d 1257
(Ala.Cr.App.), cert. denied, 375 So.2d 1271 (Ala. 1979); Tate v. State, 435 So.2d 190 (Ala.Cr.App. 1983); Smith v. State, 446 So.2d 68 (Ala.Cr.App. 1984). 'The evidence need not negate the most remote possibility of substitution, alteration, or tampering with the evidence, but rather most prove to a reasonable probability that the item is the same as, and not substantially different from, the object as it existed at the beginning of the chain.' Slaughter v. State, 411 So.2d 819, 822
(Ala.Cr.App. 1981)." Williams v. State, 505 So.2d 1252, 1253 (Ala.Cr.App. 1986), affirmed, Ex parte Williams, 505 So.2d 1254, 1255 (Ala. 1987) (emphasis added by the court in Williams v. State).
As for the identification cards, the State was not required to prove their chain of custody as a predicate to their admission. They were identified by Officer Boackle as the cards given to her by the defendant, and this identification was sufficient authentication. See Timmons v. State, 487 So.2d 975,983 (Ala.Cr.App. 1986).
 V
The shooting of the police officers in this case occurred as the result of a routine traffic stop of Reese's vehicle for running a red light. When Reese gave the officers false information concerning his identity, the officers attempted to arrest him and he opened fire.
To prove that Reese's motive for attempting to murder the officers was to conceal his identity, the State introduced evidence in its case-in-chief that Reese had an outstanding arrest warrant for a probation violation on an assault conviction. Reese presented an alibi defense. Then, on rebuttal, the State introduced a short-barrel, sawed-off shotgun, bearing Reese's fingerprints, which was found in the trunk of Reese's car during a lawful search of the vehicle. This was not the weapon used to shoot the officers. Over defense counsel's objection that the shotgun was not probative of any disputed issue, and that it was evidence of a collateral crime, the trial court ruled that the shotgun was admissible on the issues of identity and motive. *Page 154 
Although the shotgun was not offered in rebuttal of Reese's alibi defense, its admission was harmless error because (1) it tended to prove the motive for the shooting, and, thus, (2) it could have been introduced during the State's case-in-chief.
 "Whether a party at the rebuttal stage may elicit evidence which is not truly in rebuttal is left within the sound discretion of the trial court. At the rebuttal stage of a case the trial court, in its discretion, may admit or reject evidence which could, or more properly should have been introduced at the case-in-chief stage by the offering party." C. Gamble, McElroy's Alabama Evidence § 433.01 at 811 (3d ed. 1977).
The jury could reasonably have inferred that rather than have his true identity discovered, face probation revocation proceedings, and be prosecuted for possession of an illegal firearm under § 13A-11-63, 1975 Code of Alabama, Reese attempted to kill the arresting officers. The shotgun was admissible for the same reason that the probation violation warrant was admissible. Both tended to show Reese's motive for the charged offense. See Ford v. State, 514 So.2d 1057
(Ala.Cr.App.), cert. denied, Ex parte Ford, 514 So.2d 1060
(Ala. 1987) (in prosecution for murder of police officer who was pursuing accused, evidence of earlier shooting admissible to show motive); De Silvey v. State, 245 Ala. 163,16 So.2d 183, 184 (1943) (in prosecution for murder of woman who had previously charged accused with sexual assault, evidence of the assault indictment against him, along with his statement that if victim were out of the State, indictment would be dropped, admissible on issue of motive); Ott v. State, 36 Ala. App. 531,60 So.2d 382, 383 (1952) (in prosecution for assault with intent to murder a police officer engaged in executing a search warrant at residence of accused, evidence of illegal whiskey later found at residence admissible on issue of motive).
 VI
Reese contends that his convictions were contrary to the weight and sufficiency of the evidence because (1) the victims' description of the person who assaulted them were different; (2) Reese's fingerprints were not found on the I.D. cards handled by the assailant; (3) Reese presented evidence that his brother had access to the car stopped by Officers Smith and Boackle, and he and his brother were similar in appearance; and (4) Reese surrendered himself to the authorities when he heard the police were searching for him.
These contentions are jury arguments. "This court is not a trier of fact. The jury has already made [those] determinations and weighed the credibility of the witnesses." Mosley v. State,461 So.2d 34, 36 (Ala.Cr.App. 1984). The State presented a prima facie case through the testimony of Officers Smith and Boackle, both of whom, having had a 4-5 minute encounter with Reese following a traffic stop, identified him as the man who shot them.
 " '. . . The weight of the evidence, the credibility of the witnesses, and inferences to be drawn from the evidence, where susceptible of more than one rational conclusion, are for the jury alone. Willcutt v. State, 284 Ala. 547, 226 So.2d 328 (1969).' Walker v. State, 416 So.2d 1083, 1089
(Ala.Cr.App. 1982). 'It was within the province of the jury to give the evidence in the case whatever weight and emphasis they thought proper in reaching their verdict.' Linson v. State, 394 So.2d 85, 92
(Ala.Cr.App. 1981). 'Where, as in this case, there is conflicting evidence presented by the prosecution and the defense, it is for the jury to resolve the conflict and determine the defendant's guilt or innocence. . . . In making its determination, the jury may believe or disbelieve all or any part of the testimony presented by either side.' Terry v. State, 424 So.2d 652, 655
(Ala.Cr.App. 1982).
 " 'Conflicting evidence always presents a question for the jury unless the evidence fails to establish a prima facie case. Starling v. State, 398 So.2d 337 (Ala.Cr.App.), cert. denied, Ex parte Starling, 398 So.2d 342 (Ala. 1981).' Gardner v. State, 440 So.2d 1136, 1137 (Ala.Cr.App. 1983). By the victims['] testimony, *Page 155 
the State established a prima facie case of [attempted murder]. . . .
 " 'This Court will not interfere when the evidence is conflicting if there was material evidence tending to support the jury's verdict. "(T)he verdict settles any conflict in the evidence" and this Court will not invade the province of the jury. 24A C.J.S. Criminal Law § 1881 (1962)? Simmons v. State, 428 So.2d 218, 219
(Ala.Cr.App. 1983). 'Where there is evidence from which the jury may by fair inference find the defendant guilty, the trial court should submit the case to the jury to determine the weight it will give the evidence, and this Court should not disturb the verdict.' Giles v. State, 440 So.2d 1237, 1239 (Ala.Cr.App. 1983). 'Conflicting evidence is for the jury and a verdict rendered thereon will not be disturbed on appeal.' Crowell v. State, 389 So.2d 545, 548 (Ala.Cr.App. 1980)." Mosley, 461 So.2d at 36.
Reese received a fair trial, and the judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.