627 So.2d 1013 (1992)
Ex parte State of Alabama.
Re Audrey Louis HUNTLEY
v.
STATE.
1910530.
Supreme Court of Alabama.
September 18, 1992.
On Application for Rehearing October 8, 1993.
James H. Evans, Atty. Gen., and Stephen N. Dodd, Asst. Atty. Gen., for petitioner.
Michael D. Blalock, Birmingham, for respondent.
ADAMS, Justice.
The State of Alabama petitions this Court for certiorari review of a judgment of the Court of Criminal Appeals reversing Audrey Huntley's conviction in the Jefferson County Circuit Court for rape and sodomy. See §§ 13A-6-61 and 13A-6-63, Ala.Code 1975. The Court of Criminal Appeals reversed on the ground that the State had exercised its peremptory challenges in a racially discriminatory manner. We affirm.
During jury selection in Huntley's case, the prosecutor used five of her seven peremptory challenges to remove black persons from the jury. Before the jury was sworn, the defendant moved to quash the jury panel *1014 on the ground that the State had exercised its challenges in a racially discriminatory manner, in violation of the defendant's constitutional guarantee of a right to an impartial trial. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In this connection, the record reveals the following discourse:
"[By the defense]. Your Honor, we make a motion to have a new jury venire set based on the fact [that the State used] five out of its seven [peremptory challenges] to strike blacks from the venire here. We'd like for the record to show ... that the accused in this case is a middle-aged black male. And that ... [there are no] race-neutral reasons for the State's striking some of the [veniremembers]....
"[By the prosecutrix]. I'm assuming I'll be given an opportunity to put my reasons on the record for [the] strikes.
"[By the Court]. If I find it necessary. For the record, I'd like to say that ... the State did use five of its seven strikes to strike blacks. However, according to my records, [there are] still five remaining blacks on this jury, is that correct?
"....
"[By the Defense]. Yes, your Honor. The problem is that I ... think the Court should rule that if one strike is not a[if] there is not a race-neutral reason for one of the strikes, ... the court can turn around and order the whole venire ... [quashed] and a new one empaneled."
Following these remarks, the defendant offered for the record comments on various features of the case, particularly alleging the absence of meaningful voir dire, which, he contended, constituted a prima facie case of discrimination. In response, the trial judge stated: "For the record, the court does not find ... evidence of racial bias in the use of the strikes, especially in light of the fact that there are still five [blacks] remaining.... But for the purposes of the record, I'll let [the prosecutrix] give her reasons in each case." (Emphasis added.) The State then proffered for each challenge reasons that it contended were racially neutral. Subsequently, the trial proceeded and the defendant was convicted.
The Court of Criminal Appeals reversed the judgment of the trial court and remanded the cause, holding that the State had "failed to carry its `burden of articulating ... clear, specific and legitimate reason[s] for the challenge[s] which relate[d] to the particular case to be tried, and which [were] nondiscriminatory.'" Huntley v. State, 627 So.2d 1011, 1012 (Ala.Crim.App.1991) (emphasis in original) (quoting Ex parte Branch, 526 So.2d 609, 623 (Ala.1987)). We granted the State's petition for certiorari review in order to consider its contention that because the trial court expressly determined that the defendant had failed to present a prima facie case of discrimination, the Court of Criminal Appeals erroneously concluded that the burden had shifted to the State to justify its challenges, and, consequently, erroneously held that the State had failed to carry its burden. In other words, the State contends that the Court of Criminal Appeals incorrectly bypassed review of the correctness of the trial judge's finding as to the existence of a prima facie case, a procedural step prerequisite, it insists, to the reviewing court's consideration of the adequacy of the State's explanations. These contentions necessitate a brief review of the technical procedure invoked by allegations of discrimination in jury selection.
Upon the exercise of the prosecution's first peremptory challenge of a black veniremember, a defendant is entitled to a Batson hearing. Harrell v. State, 555 So.2d 263, 267-68 (Ala.1989) (adopting a "bright line test" for determining the defendant's right to a hearing); cf. Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (defendant need not be a member of the challenged veniremember's minority group). This hearing provides the defendant the opportunity to marshal all available evidence in order to construct a prima facie case of discrimination. Ex parte Branch, 526 So.2d 609, 620 (Ala.1987); Ex parte Jackson, 516 So.2d 768, 772 (Ala.1986) (quoting Batson, 476 U.S. at 96-97, 106 S.Ct. at 1723). If the circumstances raise an inference of discrimination, the State must attempt to justify its challenges, the burden having shifted to the State to rebut the defendant's prima facie *1015 case. Ex parte Bird, 594 So.2d 676, 680 (Ala.1991). Following the State's explanations, the defendant may offer rebuttal evidence "showing that the reasons or explanations are merely a sham or pretext" for racial discrimination. Ex parte Branch, 526 So.2d at 624 (citing People v. Wheeler, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978)).[1]
Although each logical step within this procedural framework is theoretically severable, considerations of justice, expediency, and judicial economy oppose a slavish adherence to the framework in practice. First, considerations of judicial economy require a record of all the evidence bearing on the issue of alleged discrimination. Although, technically, the State is under no compulsion to rebut an inference of discrimination until a prima facie case exists, this Court, if it determines that an inference clearly exists, will not hesitate to remand a cause to the trial court with directions to examine the State's explanations. See, e.g., Ex parte Adkins, 600 So.2d 1067 (Ala.1992); Ex parte Bankhead, 585 So.2d 112 (Ala.1991); Fowler v. Family Dollar Stores, Inc., 571 So.2d 1102 (Ala.1990); Moore v. Ray Sumlin Const. Co., 570 So.2d 573 (Ala.1990); Thomas v. Diversified Contractors, Inc., 551 So.2d 343 (Ala.1989); Harrell v. State, 555 So.2d 263 (Ala.1989); Ex parte Minnifield, 530 So.2d 249 (Ala.1988); Ex parte Branch, 526 So.2d 609 (Ala.1987); Ex parte Godbolt, 546 So.2d 991 (Ala.1987); Ex parte Penn, 539 So.2d 319 (Ala.1987); Ex parte Jackson, 516 So.2d 768 (Ala.1986). It is clear from the dialogue in this case that the trial judge, though unconvinced that the defendant had presented an inference of discrimination, nevertheless sought, as evidenced by his conscientious concern that the record include the State's explanations for its strikes, to avoid such a remand order. To reverse the judgment of the Court of Criminal Appeals for considering the entire record, with which the trial court sought to expedite the judicial process, seems anomalous at best.[2] Second, because appellate courts defer to the trial judge's objective observation of the voir dire process, considerations of justice invite a contemporaneous record, rather than post hoc excuses offered by the State long after the events have faded from the trial judge's memory.
Moreover, many of the same factors are equally relevant at more than one logical step in a Batson analysis framework. For example, a defendant may both construct a prima facie case and rebut the State's proffered explanations by showing that the prosecution exercised (1) desultory voir dire, (2) "[d]isparate examination of members of the venire," (3) "disparate treatment" of veniremembers who shared certain characteristics other than race, and (4) a number of challenges to black veniremembers disproportionate to their representation on the venire. Ex parte Branch, 526 So.2d at 623-24. Thus, the evidence that was, or could have been, propounded by the defendant in rebuttal of the prosecution's explanations rests within the breast of the trial judge, and, necessarily, actuates his judgment as to whether the defendant has presented a prima facie case.
Because this evidence, in conjunction with the explanations presented by the prosecution, was necessarily considered by the trial judge, it is ripe for review. The Court of Criminal Appeals does not err, therefore, in reviewing all the evidence of record, including those facts of which it may take judicial notice, such as the frequency of judgments from the particular judicial circuit involved that have been reversed because of discriminatory jury selection. Ex parte Bird, 594 So.2d at 681; Warner v. State, 594 So.2d 664, 672 (Ala.Crim.App.1990), reversed on other grounds, Ex parte Bird, supra. This is true even where the trial judge has expressly determined that the defendant failed to present a prima facie case. Indeed, *1016 a rule that so places form over substance as to require the reversal of an appellate judgment solely for alleged digressions from a framework, which, as we have discussed above, involves mutable and overlapping boundaries, would ill serve the people of Alabama who depend on an efficiently functioning justice system.
Considerations such as these undoubtedly underpin the rule set forth in United States v. Forbes, 816 F.2d 1006 (5th Cir.1987). Stating that "appellate review should not become bogged down on the question of whether the defendant made a prima facie showing," the court explained:
"Taking our cue from Batson`s repeated analogies to Title VII jurisprudence, [476 U.S. at 94 n. 18, 96 n. 19, 98 n. 21,] 106 S.Ct. [at] 1721 n. 18, 1722 n. 19, 1724 n. 21, we hold that when the prosecution's explanation is of record, we will review only the district court's finding of discrimination vel non. Cf., e.g., U.S. Postal Service Bd. of Gov. v. Aikens, 460 U.S. 711 [713-14], 103 S.Ct. 1478, 1481-82, 75 L.Ed.2d 403 (1983); Merrill v. Southern Methodist University, 806 F.2d 600, 605 n. 6 (5th Cir.1986) (noting in Title VII context that `by the time a full-tried case reaches us on appeal, the parties' showing at the preliminary levels of the framework is irrelevant.... We need address only the propriety of the ultimate finding of discrimination vel non.' (quoting EEOC v. Exxon Shipping Co., 745 F.2d 967, 972 (5th Cir.1984))."
816 F.2d at 1010.
The Court of Criminal Appeals cited this rule with approval in Currin v. State, 535 So.2d 221, 223 (Ala.Crim.App.), cert. denied, 535 So.2d 225 (Ala.1988); see also McLeod v. State, 581 So.2d 1144 (Ala.Crim.App.1990); Williams v. State, 548 So.2d 501, 504 (Ala. Crim.App.1988), cert. denied, 489 U.S. 1028, 109 S.Ct. 1159, 103 L.Ed.2d 218 (1989). However, in Reese v. State, 549 So.2d 148 (Ala.Crim.App.1989), that court held that where the trial court expressly determines that no inference of discrimination exists, a reviewing court should not examine the State's explanations for its challenges. In attempting to distinguish this principle from the one approved in Currin, the court stated:
"In Currin v. State, 535 So.2d 221, 223 (Ala.Crim.App.1988), cert. denied, Ex parte Currin, 535 So.2d 225 (Ala.1988), this court noted that, when the prosecutor states his reasons for striking black jurors, the appellate court should not become `bogged down' with the question of whether a prima facie case of purposeful discrimination has been made. Instead, it should normally proceed to determine the validity of the reasons given. Although the State's attorney gave his reasons for striking blacks here, as in Currin, we will not examine the validity of those reasons as we did in Currin. The distinction between this case and Currin lies in the fact that here the trial court specifically ruled, prior to any reasons having been given, that the defendant had not established a prima facie case. In Currin, no such ruling was made. Therefore, we could not tell from the judge's ultimate denial of the motion, in Currin, whether he found that the defendant failed to make a prima facie showing, or whether he found that the State's reasons were racially neutral. Here, we know the basis for the court's ruling and we hold that it was not `clearly erroneous.' See, Ex parte Branch, 526 So.2d 609, 625 (Ala. 1987). Under these circumstances, we need not, and in fact should not, examine the prosecutor's reasons themselves."
549 So.2d at 152. (Emphasis supplied.)
We are unpersuaded by the Reese reasoning, which purports to distinguish between cases on the basis of the trial court's express finding on the threshold issue of discrimination. Indeed, the trial judge in Forbes, like the trial judge in Reese, expressly found no inference of discrimination. United States v. Forbes, 816 F.2d at 1009 n. 5. Consequently, we hold that in reviewing allegations that the prosecution has exercised its peremptory challenges in a racially discriminatory manner, the reviewing court's inquiry, whether the State's explanations are offered voluntarily or by order of the trial judge, shall not be restricted by the mutable and often overlapping boundaries inherent within a Batson -analysis framework, but, rather, shall focus solely upon the "propriety of the ultimate finding of discrimination vel non." *1017 Merrill v. Southern Methodist University, 806 F.2d 600, 605 n. 6 (5th Cir.1986); see United States v. Forbes, 816 F.2d 1006, 1010 (5th Cir.1987). The rule propounded in Reese, to the extent that it conflicts with this holding, is overruled. Consequently, the judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, KENNEDY and INGRAM, JJ., concur.
MADDOX, J., concurs specially.
HOUSTON, J., dissents.
MADDOX, Justice (concurring specially).
Trial judges sometimes require or permit the State to offer race-neutral reasons for the exercise of peremptory strikes even though the defendant has not made a prima facie showing of purposeful discrimination as required by law, and even though the trial judge has made a specific finding that there was no such prima facie showing.[3] This case falls into that category.
The facts are admitted. During jury selection, the prosecutor used five of her seven peremptory strikes to remove black persons from the jury. After the jury was struck, Huntley's counsel timely objected and made a Batson motion. Huntley's counsel set forth his reasons, as to specific venirepersons excluded, for asserting that the prosecutor had exercised her peremptory challenges in a racially discriminatory manner. After the defense attorney had made his Batson motion, and after he had explained to the trial court why he thought all of the State's five strikes of black persons were racially motivated, the court stated:
"For the record, the Court does not find evidence of racial bias in the use of the strikes, especially in light of the fact that there are still five [black jurors] remaining, [and] given the nature of the case. But, for the purpose of the record I'll let [the prosecutor] give her reasons in each case."
(R. at 36.)
The opinion states that "technically, the State is under no compulsion to rebut an inference of discrimination until a prima facie case exists." Maj. op. at 1015. I agree with that statement.
When trial judges either require or permit prosecutors to state their reasons, even though they have found that the defendant has failed to make a prima facie showing of discriminatory use of peremptory strikes, appellate courts have generally reviewed those reasons to determine if they are sufficiently race neutral. The prosecutor here accepted the trial court's offer to "let [the prosecutor] give her reasons in each case." I have to agree that making a distinction between a case in which the prosecutor is required to state reasons for strikes and one in which the prosecutor voluntarily states reasons for strikes is probably too narrow. I do, however, set out what I believe would be the better procedure.
As I understand the principle stated in Batson, as now extended to cover strikes by defendants,[4] a principle that I believe probably will be further extended to include gender-based strikes,[5] it is that prospective jurors, regardless of race, have a right to serve on a jury, in order to preserve public confidence in the integrity of the jury system, and that the parties should not exclude prospective jurors based on the fact that they are members of a cognizable class of persons.
I have always thought that many Batson problems could be eliminated in both criminal and civil cases by the following procedure:
(1) Requiring prospective jurors, when they are summoned to appear or when they assemble, to fill out a written questionnaire *1018 that would provide substantial background information to the parties to use in exercising their peremptory strikes.[6] In addition to a general questionnaire, the parties might have specific questions, because of the particular nature of the case to be tried, that they would want prospective jurors to answer.
(2) Limiting the number of peremptory strikes available by limiting the size of the venire from which the parties begin striking. In a majority of civil and criminal cases, the rules of procedure only require 24 qualified jurors to be on the panel when the parties begin to exercise their peremptory challenges.
(3) Adopting the rule used in Federal courts that prohibits so-called "back striking"; that is, placing 12 qualified prospective jurors in the jury box, and having the parties decide how many of those 12 they separately and severally want to strike. If a prospective juror was not removed from the box by either side, that juror could not be removed later.
Because the Batson rule now applies to strikes exercised by criminal defendants, and because I believe that it will soon apply to gender-based strikes, I think trial judges should consider permitting prospective jurors to fill out a questionnaire that would contain information helpful to the parties in exercising peremptory challenges without regard to a prospective juror's race or gender. Such a procedure would greatly assist the trial court in determining whether a party has made a prima facie case of discrimination and whether any reasons offered in support of the strikes were in fact race neutral. Furthermore, the procedure would greatly assist appellate courts in reviewing challenges made by either side.
Batson and Branch basically prohibit stereotypical strikes. Parties should ask themselves when exercising their peremptory challenges, "Why am I striking this particular person?" If it is because of race, which I think will later be extended to gender, then it violates the Batson rule. That is what happened here, and the Court of Criminal Appeals, on review, found that the State had failed to offer "`a clear, specific and legitimate reason for the challenge which relate[d] to the particular case to be tried, and which is nondiscriminatory.'" Huntley v. State, 627 So.2d 1011 (Ala.Crim.App.1991) (quoting Ex parte Branch, 526 So.2d 609, 623 (Ala. 1987)). (Emphasis added in Huntley.) I cannot disagree with that finding, but I would point out that the Batson rule now applies to strikes by criminal defendants; so, the defendant may have won a Pyrrhic victory. On remand, the defendant will be living by the same rules that he has successfully required the prosecution to live by.[7]
HOUSTON, Justice (dissenting).
I dissent for the reasons stated in my concurrence in the result in Ex parte Demunn, 627 So.2d 1010 (Ala.1992). I believe that, as a matter of law, the defendant did not prove a prima facie case of discrimination. Therefore, I would reverse the judgment of the Court of Criminal Appeals and affirm the judgment of the trial court.
This case involves sex crimesrape and sodomyallegedly committed by a middle-aged black male against a young black female. Five blacks served on the 12-person petit jury. Although the state used five of its seven strikes to strike blacks, it used some of its strikes to strike non-blacks. If the defendant struck no blacks, then the racial composition of the petit jury was almost proportionately the same as the racial composition of the venire from which it was struck.
I have spent many soul-searching hours considering whether the judiciary should abolish the established procedure of allowing *1019 peremptory strikes on the basis that they are by their very nature discriminatory. With these strikes, one party will strike jurors for some reasonbecause they are male, female, gay, straight, young, old, rich, poor, attractive, ugly, too good, too bad, doctors, lawyers, Indian chiefs, married to the wrong persons, formerly plaintiffs, formerly defendants; or because they formerly served on juries that acquitted or on juries that convicted, on juries that found for plaintiffs and awarded too much or on juries that awarded not enough in damages, or on juries that found for defendants; because they are prune mouthed or cross their arms when being questioned; because they are smiling, frowning, fat, skinny, married, single, divorced, with children, without children, Protestant, Catholic, Jewish, Muslim, or Scientologist; because they own homes, do not own homes, drive cars, do not drive cars, have bumper stickers on their cars, do not have bumper stickers on their cars; or because they are Democrats, Republicans, Independents, or Socialistsor for no articulable reason except that the party would rather have Juror 25 than Juror 48. Should the judiciary abolish peremptory strikes? I think not. I still believe that litigants, whether they are black or white, accused or prosecutor, plaintiffs or defendants, benefit from the peremptory challenge. Therefore, I would require the litigant who makes a Batson challenge to prove that the other party resorted to racial discrimination in peremptorily striking a particular petit jury, before the other party is required to explain why he or she peremptorily challenged a particular juror or particular jurors.
To me this case does not present a prima facie showing of discrimination, as a matter of law. I would let the trial court be the trial court and perform the duties and exercise the responsibilities that the Unified Judicial System assigns to the trial court.

On Application for Rehearing
ADAMS, Justice.
APPLICATION OVERRULED.
HORNSBY, C.J., and SHORES, KENNEDY and INGRAM, JJ., concur.
MADDOX, J., concurs specially.
HOUSTON, J., dissents.
MADDOX, Justice (concurring specially).
The State's application for rehearing states that "[i]n affirming the Court of Criminal Appeals' decision in the instant case by overruling in part the Court of Criminal Appeals' prior decision in Reese v. State, 549 So.2d 148 (Ala.Crim.App.1989), this Court reached a holding that is in conflict with the prior decision of the U.S. Supreme Court in Hernandez v. New York, [500] U.S. [352], 111 S.Ct. 1859 [114 L.Ed.2d 395] (1991)."
The State argues that this Court's decision that the reviewing court "shall focus solely upon the propriety of the ultimate finding of discrimination vel non," see page 1016, conflicts with that of the United States Supreme Court in Hernandez, in which the Supreme Court stated that "the trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal." 500 U.S. at ___, 111 S.Ct. at 1868 (citing Batson v. Kentucky, 476 U.S. 79 at 98, n. 21, 106 S.Ct. 1712 at 1724, n. 21, 90 L.Ed.2d 69 (1986)).
The State's main argument seems to be that this Court, and the Court of Criminal Appeals, did not give the proper deference to the trial court's finding of fact. I cannot accept the State's argument.
The opinion of the Court in this case did, in fact, overrule in part Reese v. State, 549 So.2d 148 (Ala.Crim.App.1989),[1] but the specific holding in this case regarding the reviewing function of this Court was: "[I]n reviewing allegations that the prosecution has exercised its peremptory challenges in a racially discriminatory manner, the reviewing court's inquiry, whether the State's explanations are offered voluntarily or by order of the trial judge, shall not be restricted by the mutable and often overlapping boundaries *1020 inherent within a Batson-analysis framework, but, rather, shall focus solely upon the `propriety of the ultimate finding of discrimination vel non.'" See page 1016. Quoting Merrill v. Southern Methodist University, 806 F.2d 600, 605 at n. 6 (5th Cir.1986), and citing United States v. Forbes, 816 F.2d 1006, 1010 (5th Cir.1987).
I fail to see how that holding is inconsistent with the holding in Hernandez that the reviewing Court should give deference to the finding of fact made by the trial judge. In Hernandez, the defendant asked the Supreme Court to review his claim that the prosecutor exercised peremptory strikes to exclude Latinos from the jury because of their race. In Hernandez's trial for attempted murder, the court began with a venire of 63. After a jury of nine was empaneled, Hernandez objected that the prosecutor had used four peremptory challenges to exclude Latino potential jurors. Two of the Latinos had been challenged by the prosecutor because they had brothers who had been convicted of crimes. The other two were excluded because the prosecutor had misgivings about the jurors' ability to listen to the English interpreter and not to the Spanish-speaking witness.
Hernandez's Batson claim arose from the exclusion of the two Latinos and their reliance upon an interpreter. After Hernandez objected on Batson grounds, the prosecutor did not wait for a ruling by the trial judge on whether Hernandez had established a prima facie case of racial discrimination. Instead, the prosecutor volunteered as his reasons for striking the two jurors the fact that he did not feel that they would be able to listen to and follow the interpreter. The prosecutor noted that each of the four complainants in the case were Hispanics and that all of his civilian witnesses were going to be Hispanic, and that he had no reason to want to exclude Hispanics. The trial judge rejected Hernandez's claim. On appeal, the reviewing court noted that the prosecutor had challenged the only three prospective jurors with definite Hispanic surnames, and the court ruled that this fact made out a prima facie case of discrimination. The appellate court affirmed the trial court's rejection of Hernandez's Batson claim on the ground that the prosecutor had offered race-neutral explanations for the peremptory strikes sufficient to rebut Hernandez's prima facie case.
Although the trial court had no occasion to rule whether Hernandez had made a prima facie showing of intentional discrimination, the Supreme Court noted that "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." 500 U.S. at ___, 111 S.Ct. at 1866.
The Supreme Court stated that a race-neutral explanation "means an explanation based on something other than the race of the juror." 500 U.S. at ___, 111 S.Ct. at 1866. The Court further stated that at "issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." Id. Once the prosecutor offers race-neutral reasons for his strikes, the trial court has to decide if the defendant has established purposeful discrimination.
"If a prosecutor articulates a basis for a peremptory challenge that results in the disproportionate exclusion of members of a certain race, the trial judge may consider that fact as evidence that the prosecutor's stated reason constitutes a pretext for racial discrimination." 500 U.S. at ___, 111 S.Ct. at 1868. The trial judge chose to believe the prosecutor's explanation, and the finding that it was race neutral should be "accorded great deference on appeal." 500 U.S. at ___, 111 S.Ct. at 1868.
In Hernandez, the Supreme Court engaged in much the same process that this Court did in reviewing the finding in this case, and after that review it stated, "[W]e decline to overturn the state trial court's finding on the issue of discriminatory intent unless convinced that its determination was clearly erroneous." 500 U.S. at ___, 111 S.Ct. at 1871.
I fail to see how the facts here are substantially different from those in Hernandez. *1021 In this case, the Court of Criminal Appeals found that the State had failed to offer "`a clear, specific and legitimate reason for the challenge which relate[d] to the particular case to be tried, and which is nondiscriminatory.'" Huntley v. State, 627 So.2d 1011, 1012 (Ala.Crim.App.1991) (quoting Ex parte Branch, 526 So.2d 609, 623 (Ala.1987). (Emphasis added in Huntley.) The Court of Criminal Appeals, at least implicitly, determined that the trial court's "ultimate finding" of nondiscrimination was not based upon facts that related to the case to be tried and that, because of that fact, the finding was clearly erroneous. That peremptory strikes must be based upon the "particular case to be tried" is clear from a reading of Batson. Consequently, the Court of Criminal Appeals merely held that the finding of nondiscrimination was not supported by the record and, hence, was clearly erroneous.
As I said in my special concurrence on original deliverance, I cannot disagree with that holding, but as I also pointed out in that special concurrence, "the Batson rule now applies to strikes by criminal defendants; so, the defendant may have won a Pyrrhic victory," because "[o]n remand, the defendant will be living by the same rules that he has successfully required the prosecution to live by." See page 1018.
NOTES
[1] Alternatively, where he has produced all available evidence prior to the State's explanations, the defendant may, as was done in this case, rest upon the arguments advanced at his initial showing rather than reiterate many of the same contentions.
[2] Although the trial judge in this case, appropriately, as it turns out, sought to expedite the judicial process by providing a full and complete record, a practice that should not be discouraged, we do not mean to imply that the trial judge, when convinced that no inference of discrimination exists, is, nevertheless, obligated to require the State to explain its strikes.
[3] Cf. Reese v. State, 549 So.2d 148 (Ala.Cr.App. 1989) (overruled today by the opinion in this case); Currin v. State, 535 So.2d 221 (Ala.Cr. App.), cert. denied, 535 So.2d 225 (Ala.1988).
[4] See Georgia v. McCollum, ___ U.S. ___, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992).
[5] See Ex parte Murphy, 596 So.2d 45 (Ala.1992) (Maddox, J., dissenting from the denial of the writ of certiorari); Ex parte Fisher, 587 So.2d 1039 (Ala.1991) (Maddox, J., dissenting from the denial of the writ of certiorari); and Ex parte Dysart, 581 So.2d 545 (Ala.1991) (Maddox, J., dissenting from the denial of the writ of certiorari).
[6] I understand that the Circuit Court of Montgomery County has adopted a procedure that allows prospective jurors to fill out a general questionnaire when they first assemble, and that counsel for parties having cases to be tried can obtain this information for use in striking the jury.
[7] Even after the prosecution struck five blacks, five blacks served on the trial jury that convicted the defendant. Because the Batson rule now applies to a criminal defendant's peremptory challenges, if this defendant again uses all of his peremptory challenges to remove whites, then his strikes can also be challenged.
[1] In Reese, the court held that where the trial court expressly determines that no inference of discrimination exists, a reviewing court should not examine the State's explanations for its challenges. See our opinion of September 18, 1992, page 1016.